Leonard MAYS *v.* STATE of Arkansas

CA CR 01-662                                    61 S.W.3d 919

Court of Appeals of Arkansas
Division III
Opinion delivered December 5, 2001

*Bill Luppen,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. Appellant, Leonard Mays, was charged with possession of cocaine with intent to deliver. In a pretrial motion to suppress, appellant asserted that this charge resulted from a search and seizure that was made absent consent and exigent circumstances. The trial court denied Mays's motion, and he then entered a conditional plea of guilty pursuant to Ark. R. Crim. P. 24.3, reserving his right to appeal the adverse ruling. Mays was sentenced to 120 months in the Arkansas Department of Correction with sixty-six months suspended. He does not allege police lacked reasonable suspicion to stop him. His sole argument on appeal is that the trial court erred in denying his motion to suppress because the police lacked reasonable suspicion to detain him. We disagree, and therefore affirm.

In reviewing a trial court's ruling on a motion to suppress, the court makes an independent determination based on the totality of the circumstances, and reverses only if the ruling is clearly against the preponderance of the evidence. *Owen v. State,* 75 Ark. App. 39, 53 S.W.3d 62 (2001). When police officers have

conducted a search without a warrant, our review begins with the basic premise that a warrantless search is unauthorized. *Hoey v. State*, 73 Ark. App. 118, 42 S.W.3d 564 (2001)(citing *Evans v. State*, 65 Ark. App. 232, 987 S.W.2d 741 (1999)). All warrantless searches are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant, and the burden of proof is on those who seek to justify it. *Id.*

At the suppression hearing, Officer Flannery testified that on May 4, 2000, he conducted surveillance in Little Rock on 1406 Izard Street as part of an undercover narcotics purchase by fellow officer, Detective Bakalekos. After making contact with seller Paul Dailey,[1] Detective Bakalekos notified Detective Flannery that Mr. Dailey did not have the narcotics, but was expecting a delivery soon. Thereafter, Detective Flannery observed a black male, later identified as the appellant, exit a blue Chevrolet truck parked in front of the residence. The appellant spoke briefly with Dailey, and they entered the residence. When Detective Flannery saw Dailey return to the front yard, he radioed Detective Bakalekos to come back around and make contact with him. Detective Bakalekos pulled back around, picked up Mr. Dailey, and turned westbound on Fourteenth Street, thereby indicating to the other officers that Dailey had narcotics and an arrest was imminent. Once Bakalekos made contact with Dailey, Detective Flannery observed appellant leaving the residence and followed him. The detective testified that appellant was driving "pretty quick," and when he discovered the officer was behind him, appellant pulled over. Appellant informed Detective Flannery that he had drugs in his right pocket, and Flannery thereafter "retrieved a paper towel that was kind of rolled up which contained approximately seven, eight grams [sic] of off-white rock-like substance[.]"

Appellant argues that Detective Flannery possessed a purely conjectural suspicion that he was involved in criminal activity because the detective neither saw anything in appellant's behavior or actions that indicated he was involved in criminal activity nor did he witness an exchange of drugs or money.

■■ The supreme court has articulated that there are three types of permissible encounters between the police and private citizens, one of which is when an officer justifiably restrains an

---

[1] After selling drugs to the undercover detective, Mr. Dailey, who is not a party, was arrested and taken into custody by officers at the scene.

individual who he or she has an "articulable suspicion" has committed or is about to commit a crime. *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998). Rule 3.1 of the Arkansas Rules of Criminal Procedure provides that a law enforcement officer may stop and detain any person he reasonably suspects is committing, has committed, or is about to commit a felony. For purposes of this rule, reasonable suspicion means a suspicion based upon facts or circumstances which give rise to more than a bare, imaginary, or purely conjectural suspicion. *Addison v. State*, 298 Ark. 1, 765 S.W.2d 566 (1989).

An officer does not have to witness the violation of a statute in order to stop a suspect. *Piercefield v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994). The justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating a person or vehicle may be involved in criminal activity. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284 (1982), *cert. denied*, 459 U.S. 882 (1982). Among the factors to consider in determining whether an officer has grounds to "reasonably suspect" are the demeanor of the suspect, whether the suspect is consorting with others whose conduct is "reasonably suspect," and the suspect's proximity to known criminal conduct. Ark. Code Ann. § 16-81-203 (1987); *see also Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999).

In reviewing the trial court's denial of the motion to suppress, we conclude from the totality of the circumstances that Detective Flannery had reasonable suspicion. His suspicion was based on more than conjecture. He had reasonable grounds to suspect that appellant had committed a felony because when he stopped him, appellant was nervous, he had been with Dailey who officers obviously suspected of selling drugs, and he was at the residence with Dailey before the drug sale took place.

Affirmed.

ROBBINS and CRABTREE, JJ., agree.