Marc Jess HENLEY, Jr. *v.* STATE of Arkansas

CA CR 05-1152                    234 S.W.3d 316

Court of Appeals of Arkansas
Opinion delivered April 19, 2006

*J. Blake Hendrix*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

Larry D. Vaught, Judge. Marc Jess Henley appeals[1] his convictions following a conditional guilty plea for attempt to manufacture methamphetamine, possession of drug paraphernalia with intent to manufacture, and maintaining a drug premises. On appeal he argues that the trial court erred in its denial of his motion to suppress because the evidence supporting his convictions was discovered after a warrantless search of his home. We agree that the evidence was obtained following an illegal search of Henley's home and should have been suppressed. Accordingly, we reverse and remand.

On the evening of July 21, 2004, Officer Andy Shock of the Faulkner County Sheriff's Office received a call from Investigator Wesley Potts of the Van Buren County Sheriff's Office wanting to talk to Marc Henley about a burglary that occurred in Van Buren County. Potts did not have a warrant, but Shock checked his warrant log and discovered that Henley had a misdemeanor warrant for a failure to appear on a speeding ticket.

Later that night, around 10:00 p.m., Potts and Shock — along with another Van Buren County officer — met at the Eight Mile Store (a convenience store located about a mile from Henley's home). From there, they drove in two separate vehicles to Henley's home, arriving at 10:18 p.m. The officers parked their vehicles in Henley's driveway, behind several other vehicles. After the officers exited their car, armed with flashlights, they looked into the other cars parked in the drive. Shock and Potts then proceeded to the front door of Henley's home. As they approached the door the officers looked into Henley's home through a bay window (although the window had a blind covering it, a section of the blind was damaged allowing officers to see inside the home). The officers observed Henley and a female (later identified as Natalie Bailey) inside the home standing around a pool table.

Once Shock and Potts arrived at the front door, they began knocking and shouting for Henley to come to the door. As Potts

---

[1] Henley's notice of appeal states that he is appealing "from his conviction for Attempt to Manufacture Methamphetamine, Possession of Drug Paraphernalia with Intent to Manufacture, and Maintaining a Drug Premises." His notice of appeal further states that the "Judgment and Commitment Order was entered on May 25, 2005." However, the judgment and commitment order was actually entered on July 27, 2005. There was a continuance order entered on May 25, 2005. We are satisfied that the date reflected in Henley's notice of appeal was a typographical error, and the fact that the notice of appeal states that Henley is appealing from the judgment and commitment order is adequate to address the merits.

continued knocking on the door, Shock went back to look through the bay window, where he observed Henley and Bailey under the pool table. Meanwhile, the third officer walked around to the back of the residence.

Eventually Henley opened the front door and was placed under arrest on the misdemeanor warrant and was handcuffed. He was then questioned by Potts about the burglary until Potts was satisfied that Henley was not involved in any Van Buren County burglary. However, when Henley opened the door to exit his home, Shock smelled an overwhelming chemical odor that he associated with the processing of methamphetamine. While Henley was being questioned, Bailey also came outside, where she was subjected to a pat-down search. The search revealed a quantity of an illegal substance (later identified as methamphetamine). She responded to the discovery of the secreted black-zippered bag containing methamphetamine by stating "You can't tell Marc I gave it to you. He told me to put it in there. He would kill me if I told you that." At this point the officers asked Henley if he would consent to a search of his home. He refused their request. However, as Henley was being placed in the squad car, he mentioned that he was on probation. Shock then called Kelly Brock, a Faulkner County Probation Officer, who, suspecting narcotic activity, called Detective Todd Mize, a narcotics officer. Once Brock and Mize arrived, Henley and Bailey were taken back into the home. As Henley and Bailey were being watched, officers — primarily Mize — conducted a search of the home. The search revealed the components of a methamphetamine laboratory. Following this discovery, Henley was arrested and eventually convicted of the numerous offenses that are the subject of this appeal.

On appeal, Henley argues that the illegal drugs and prohibited laboratory items discovered in his home should be suppressed because they were discovered as a result of a warrantless search. The State responds that according to one of the conditions of Henley's probation — which required that he allow a supervising probation officer to visit with him — the entry did not require a warrant. The State alternatively argues that the search was justified because it was a result of his arrest on an outstanding warrant.

In reviewing the trial court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by

the trial court and proper deference to the trial court's findings. *See Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004). As an initial matter, we note that all warrantless searches are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Bratton v. State*, 77 Ark. App. 174, 72 S.W.3d 522 (2002). The burden of proof is on the State to justify the search. *Mays v. State*, 76 Ark. App. 169, 61 S.W.3d 919 (2001). A warrantless entry into a private home is presumptively unreasonable. *Welsh v. Wisconsin*, 466 U.S. 740 (1984); *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). The burden is on the State to prove that the warrantless activity was reasonable. *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). With few exceptions, the question of whether a warrantless search of a home is reasonable and hence constitutional must be answered, "no." *Kyllo v. United States*, 533 U.S. 27 (2001). On appeal, we make an independent determination based on the totality of the circumstances to ascertain whether the State has met its burden. *Norris, supra.*

There is no question that Henley's home was searched without a warrant, and the State does not contend or attempt to prove that there were exigent circumstances justifying a warrantless search or that the evidence discovered in the search of Henley's home would have inevitably been discovered through lawful investigatory work. Instead, the State argues that the search was valid because it falls within the "probation exception" to the warrant requirement. At the outset, we note that there is no such exception. Instead, it is common that as a condition to probation or parole a party will consent-in-advance to allow officers to search his person, automobile, or other property in his control. In *Cherry v. State* our supreme court considered the constitutionality of a typical consent-in-advance agreement that stated:

> Any parolee's person, automobile, residence, or any property under his control may be searched by a parole officer without a warrant if the officer has reasonable grounds for investigating whether the parolee has violated the terms of his parole or committed a crime.

302 Ark. 462, 464, 791 S.W.2d 354, 356 (1990). The court concluded that such consent-in-advance clauses are not constitutionally infirm as long as the consent agreement meets certain criteria. *Id*. In order to support a warrantless search, the court reasoned, the form signed by the defendant must amount to a consent to search, and the search must have been conducted in accordance with the terms of the consent granted. *Id*.

Here, however, the officers made an understandable, but serious error by assuming that Henley's probation agreement contained a typical consent-in-advance provision. Unlike the search language discussed in the *Cherry* decision and contained in most probation agreements, the only consent-in-advance language in Henley's Franklin County probation agreement details a consent to *visit*:[2]

> You must report as directed to a supervising officer and permit him or her to visit you in your residence, place of employment, or other property.

We are unable and unwilling to construe the language in Henley's agreement in any way that would justify something more than a routine visit with the person supervising his release — certainly not an intrusive search of Henley's home.[3] In its brief, the State uses the words search and visit as synonyms. This is a liberty that neither the language nor the law will permit.

■ The words "search" and "visit" are different words, with distinct meanings. According to the *Merriam-Webster Online Dictionary*, to "search" means to "look into or over carefully or thoroughly in an effort to find or discover something: as a : to examine in seeking something <*searched* the north field> b : to look through or explore by inspecting possible places of concealment or investigating suspicious circumstances." The term "visit" means "to pay a call on as an act of friendship or courtesy." In this case, Henley's probation agreement outlining his consent to visit and be visited by his "supervising officer" does not amount to a consent-in-advance to search his home. As the only evidence introduced by the State to support its claim that Henley consented to the officers' search of his home was the probation agreement, we find that the

---

[2] By way of contrast, the other actor in this case, Bailey, was a Faulkner County parolee that had a clause in her parole agreement that mirrored the visitation clause in Henley's, but it also had a search provision similar to the one discussed in *Cherry*.

[3] Moreover, at the time of the search, Henley was on "unsupervised probation" and therefore did not have a "supervising officer" that he was required to routinely visit. Furthermore, the probation officer who searched his home was neither his current nor former "supervising officer." She was from a different county and had no ongoing relationship with Henley.

State has failed to carry its required burden of proof — by clear and convincing evidence — that Henley consented to the search of his home.

In the alternative, the State argues that the search was justified because it followed the arrest of Henley on a valid warrant. Henley responds that the evidence seized from his home followed a pretextual arrest and must be suppressed as dictated by *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002), and *Smith v. State*, 265 Ark. 104, 576 S.W.2d 957 (1979). In *Smith* our supreme court concluded that if the initial arrest is simply a pretext to search, the search cannot stand. *Smith v. State*, 265 Ark. 104, 576 S.W.2d 957 (1979). The supreme court reasoned that a pretextual arrest exists if the officer would not have gone to the defendant's home to arrest him otherwise. *Id.* The court specifically singled-out the misdemeanor nature of the warrant and concluded that the officers would not have arrested the defendant on such a warrant but for their desire to search his home. *Id.*

■ Here, the officers' initial intent in their contact with Henley was to interrogate him about a Van Buren County burglary. Having no warrant for that purpose, Officer Shock found an old misdemeanor warrant for Henley based on his failure to pay a speeding ticket. The officers proceeded to Henley's home where he was arrested on the outstanding misdemeanor warrant as a pretext to investigate the burglary. We find no fault with the officers' presence at Henley's home to question him about the crime they were investigating — with or without the pretext of the warrant — the officers were legally entitled to investigate the burglary crime by questioning Henley. However, the search following the arrest cannot be justified because the serving of the warrrant was merely a pretext. There was no evidence that these types of warrants were routinely served in person, after 10:00 p.m. Therefore, based on the reasoning contained in *Smith* and *Sullivan*, we agree with Henley's assertion that the evidence seized from his home followed a pretextual arrest and must be suppressed.

Finally, the State mentions — in a footnote — that there is a third justification for the search of Henley's home because Bailey, a parolee with a consent-to-search provision in her parole agreement, was an overnight guest of Henley. This argument was not developed at trial or on appeal to a sufficient degree to allow review. In order to consider the merits of the State's assertion we would need far more information regarding Bailey's status and stay

as Henley's guest. Because the record and the briefs are silent as to any meaningful argument justifying a search of Henley's home based on Bailey's consent-to-search, we will not consider the argument on appeal. Therefore, following our review of the totality of the circumstances, we hold that the search of Henley's home was unreasonable and did not fall within one of the exceptions to the rule that a search must rest upon a valid warrant. Accordingly, the trial court's denial of Henley's motion to suppress is clearly erroneous and is reversed.

Reversed and remanded.

GLADWIN and CRABTREE, JJ., agree.