Kyle Duane CHERRY *v.* STATE of Arkansas

CR 89-234                                         791 S.W.2d 354

Supreme Court of Arkansas
Opinion delivered June 11, 1990

464

G. *Keith Watkins*, for appellant.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellee.

DALE PRICE, Justice. The appellant was charged with capital felony murder. The jury convicted him of first degree murder and sentenced him to life imprisonment. He raises six issues on appeal. None have merit.

On October 21, 1988, the appellant was arrested for violating the terms and conditions of his parole. Parole officers discovered drugs and a number of firearms at a residence shared by the appellant and Bob Vargason, who was also a convicted felon on parole. The items, including a .45 pistol, were discovered pursuant to a search of the residence and of the appellant's vehicle. The appellant was taken into custody and transported to the Sharp County sheriff's office.

Ten days later, the appellant gave investigating officers two statements implicating himself in the murder of a man named Jimmie Pendergrass. Pendergrass had been found dead on April 11, 1988. His trailer had burned while he was inside. It was later

determined that he had died from a blow to the head before the fire occurred.

In his statements, the appellant told officers that he knew that Pendergrass owned a number of guns. He went to the trailer on April 11, 1988, for the purpose of stealing the guns. While inside, Pendergrass arrived home unexpectedly and appellant was discovered. Pendergrass threatened Cherry with a .45 pistol, and held the gun on the appellant for several minutes while the appellant tried to talk his way out of the situation. When Pendergrass looked away for a moment, the appellant kicked him. Pendergrass fell backward, hitting his head on the bumper of the appellant's truck. At this point, the appellant said, he realized Pendergrass was dead. He dragged the body inside the trailer. The pistol, which Pendergrass still gripped in his hand, discharged unexpectedly, setting the trailer on fire. The appellant finished loading the guns which he was stealing and left the scene. On the basis of these statements, the appellant was charged with capital felony murder.

The appellant's first argument concerns the legality of the warrantless search of his vehicle. Prior to trial, he moved to suppress from evidence a .45 pistol, seized as a result of that search.

The facts are that the appellant's parole officer, Ken Opper, received information that the appellant had moved in with Bob Vargason. Opper and Bob Wilkin, who was Vargason's parole officer, went to the residence. Upon arriving, they discovered a number of firearms in the house, plus evidence of marijuana use. Opper particularly noted the presence of some loose .45 rounds and some .45 magazines in a drawer. He said to the appellant, "there is another gun here somewhere." The appellant said he had owned a .45 but had sold it.

The appellant and Vargason were arrested at this point and transported to the sheriff's office by Deputy Dennis Burton. Deputy Burton then returned to the scene to assist in the search and seizure of items from the house. (Vargason had consented to a search of the house.) Parole officer Wilkin planned to search the appellant's vehicle, which was parked in the driveway. At Wilkin's request, Deputy Burton used a "Slimjim" device to unlock the door of the vehicle. Wilkin then searched the car and

discovered the .45 pistol. Neither Deputy Burton nor any other member of the sheriff's office participated further in the search of the vehicle.

During the suppression hearing, it was revealed that, approximately six weeks prior to his arrest, the appellant signed a document entitled "Notice to Parolees." The document read as follows:

> Any parolees' person, automobile, residence, or any property under his control may be searched by a parole officer without a warrant if the officer has reasonable grounds for investigating whether the parolee has violated the terms of his parole or committed a crime.

It is not uncommon for probationers and parolees to be subject to a condition requiring consent to various kinds of searches. *See* Cohen & Gobert, *The Law of Probation and Parole*, § 6.02 at 225 (1983). The great majority of courts have upheld the validity of this practice. Cohen & Gobert, § 5.07 at 206 and § 8.03 at 378-80; *Annot.*, 79 A.L.R.3d 1083 (1977). The question of whether a parolee's advance consent to a warrantless search is valid has not been addressed by this court.

In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances and reverse only if the ruling is clearly against the preponderance of the evidence. *Campbell* v. *State*, 294 Ark. 639, 746 S.W.2d 37 (1988).

The first matter to resolve is whether the "Notice to Parolee" signed by the appellant amounts to a consent. We find that it does. The notice does not contain the words, "I consent to a warrantless search," but it does recognize the possibility that such a search may occur. By signing the notice the appellant impliedly consented to a warrantless search. Implied consent has been recognized in similar contexts in which persons were aware in advance that they could be subject to a search. *See United States* v. *Sihler*, 562 F.2d 349 (5th Cir. 1977) (warning sign to visitors entering penitentiary that they are subject to search); *United States* v. *Doran*, 482 F.2d 929 (9th Cir. 1973) (signs and public address announcements in airport warning passengers

they are subject to search at boarding).

Having determined that the notice constitutes a consent, the next question is whether such a consent-in-advance is valid. The recent United States Supreme Court case of *Griffin* v. *Wisconsin*, 483 U.S. 868 (1987), is instructive. At issue in *Griffin* was an administrative regulation permitting a probation officer to search a probationer's home without a warrant, so long as there were reasonable grounds to believe contraband was present. The regulation explicitly defined "reasonable grounds."

The Court held that a warrantless search pursuant to this regulation did not violate the 4th amendment. The Court recognized that supervision of probationers is a "special need" of the state, permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. Therefore, it was concluded, it is impractical to require a search warrant. It was also concluded that the usual requirement that probable cause exist to justify a search may be replaced by the reasonable grounds standard.

Using the same reasoning, we hold that this warrantless search, pursuant to appellant's implied consent, did not violate the 4th amendment. The special needs of the parole process call for intensive supervision of the parolee making the warrant requirement impractical. It is also clear, although the United States Supreme Court did not employ this line of reasoning, that the appellant, as a parolee, has a diminished expectation of privacy. Legally, he is still in custody of the penal institution from which he was released. *See* Ark. Code Ann. § 16-93-701(b)(4) (1987). Finally, we note that there was no contention on the appellant's part that his consent was not given voluntarily and intelligently.

We must point out that a parole/probation officer's ability to conduct a warrantless search is not unlimited. But the consent in this case, like the regulation in *Griffin* v. *Wisconsin, supra*, contains elements that insure a search will be conducted reasonably. First of all, the consent allows a warrantless search only if reasonable grounds exist. Second, the consent does not extend to all law officers, but only to parole officers, thereby preserving its purpose as a tool of parole supervision.

Having decided that the consent is valid, the final question is whether the search was carried out under the terms of the consent. Two issues must be addressed: 1) were there reasonable grounds to investigate whether the appellant had violated the terms of his parole, and 2) was the search conducted by a parole officer? We find there was compliance with both of these terms. Among the conditions of the appellant's parole was one that he not associate with convicted felons. The parole officer's knowledge that the appellant was living with another convicted felon constituted reasonable grounds to investigate the violation.

It is also clear that, despite Deputy Burton's minimal participation in the search, the search was conducted by a parole officer. A parole officer may enlist the aid of the police, and a police officer may act at the direction of a parole officer without overreaching the scope of the search. *Sanderson* v. *State*, 649 P.2d 677 (Wyo. 1982).

We find the warrantless search conducted by the parole officer was valid. The trial court's action in refusing to suppress the .45 pistol was correct.

Our determination that the search was valid makes it unnecessary to address the appellant's claim that his in-custody statements should have been suppressed as the fruits of an illegal search. However, we do consider the appellant's claim that his statements to investigating officers should have been suppressed because the officers continued to question him after he requested the presence of an attorney.

The appellant claims that as soon as he reached the sheriff's office on October 21, he asked for permission to call his attorney. He claims the telephone log shows he placed a call to his attorney, but the log does not reveal that such a call was made by the appellant. He also claims that just prior to being questioned on October 31 and November 1, the dates on which he gave the statements in question, he asked to see his attorney. This claim is not borne out by the evidence. The interrogating officers testified that they were unaware of such a request. In addition, a waiver of rights form signed by the appellant acknowledges he was "willing to make a statement and answer questions" and that he "did not want a lawyer at this time."

■ An accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by authorities until counsel has been made available to him. *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988).

■ In examining the issue of whether an appellant either invoked or knowingly waived his *Miranda* rights, we make an independent review of the totality of the circumstances and reverse the trial court only if its ruling is clearly against the preponderance of the evidence. *Findley* v. *State*, 300 Ark. 265, 778 S.W.2d 624 (1989).

■ Here, there is simply nothing to show that the appellant ever invoked his right to counsel. His claim that he tried to phone his attorney is belied by the entries, or lack of entries in the telephone log. The trial court's determination that the appellant's testimony was not credible is well supported by the evidence; therefore, the refusal to suppress appellant's statements was correct.

The next issue concerns the appellant's request for the appointment of an independent pathologist. In a motion filed prior to trial, the appellant alleged that he was indigent and claimed that he needed the testimony of an independent pathologist to contest the findings of the state's medical examiner. The trial judge declared he would summarily deny the motion unless the appellant wanted to present evidence on the matter. The appellant said he did wish to present evidence, and the trial judge said he would hear the evidence on the morning of the trial. No evidence on the matter was ever presented to the court, and on the morning of the trial, the motion was denied.

■ The appellant has failed to demonstrate, either at the trial level or here, how he was prejudiced by the court's refusal to appoint the independent pathologist. Prejudice must be demonstrated before reversible error occurs. *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 283 (1989).

The next issue concerns the validity of testimony given by law enforcement officers who, it is alleged, did not meet the qualifications set forth by the Arkansas Commission on Law Enforcement Standards and Training. *See Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989). The appellant claims that the

testimony offered against him by these officers should have been stricken under Ark. Code Ann. § 12-9-108(a) (1987), which reads:

> A person who does not meet the standards and qualifications set forth in this subchapter or any made by the Arkansas Commission on Law Enforcement Standards and Training shall not take any official action as a police officer, and any action taken shall be held as invalid.

*Grable* v. *State, supra*, is distinguished from this case in that the objection raised there related to the act of the officer in bringing charges. Here, the motion *in limine* was directed toward police officers giving testimony. Law enforcement officers are not disqualified as witnesses based on whether they have met the criteria set forth by regulations promulgated by the Arkansas Commission on Law Enforcement Standards and Training. A person is presumed to be competent to be a witness. *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986); A.R.E. Rule 601. There was no error in permitting the officers' testimony.

Appellant's next contention is that the jury panel should have been quashed. He argues that the selection of jurors from a list of registered voters denied him an impartial jury.

We have held that the use of such a method to select jurors does not violate the requirement that the jury be selected from a representative cross-section of the community. *Sanders* v. *State*, 300 Ark. 25, 776 S.W.2d 334 (1989); *Mitchell* v. *State*, 299 Ark. 566, 776 S.W.2d 332 (1989). Appellant argues that the jury was partial because it was composed of the same registered voters who elected the judge and prosecutor. This argument is answered simply by saying that a list of registered voters would include those who voted for the judge or prosecutor, those who voted for their opponents and those who did not vote at all.

Finally, appellant argues that error occurred in the sentencing phase of the trial. The state offered a certified copy of a conviction from the State of Missouri to prove appellant's status as a habitual offender. The docket entry noted that the appellant had pled guilty to "Forgery (Class C) (3 counts)." The appellant claims the conviction should not have been used against him because the record of the conviction did not show it carried a

sentence in excess of one year, as required by Ark. Code Ann. § 5-4-503 (1987).

We take judicial notice that under Missouri law, forgery is a Class C felony. Mo. Ann. Stat. § 570.090(2) (Vernon 1979). A Class C felony is punishable by a term of years not to exceed 7 years. Mo. Ann. Stat. § 558.011(1)(3) (Vernon 1979). These prior convictions were properly considered.

In accordance with Ark. Sup. Ct. Rule 11(f), which must be followed in cases involving the death penalty or life imprisonment, we have reviewed the record and all objections decided adversely to the appellant and have found no error.

Affirmed.

GLAZE, J., concurs.