Cite as 2021 Ark. App. 107

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-20-383

| | | |
|---|---|---|
| | | **Opinion Delivered** March 10, 2021 |
| ALAX CLINGMON | APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SCR-18-157] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE DAVID G. HENRY, JUDGE |
| | | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

Alax Clingmon appeals the circuit court's denial of his motion to suppress evidence found in his home after officers conducted a warrantless search based on Clingmon's status as a parolee. He argues that the circuit court erred in finding that Ark. Code Ann. § 16-93-106 (Repl. 2016), which authorizes any certified law enforcement officer or Department of Community Correction officer to conduct a warrantless search of a parolee's person, place of residence, or motor vehicle at any time, is constitutional and in denying his motion to suppress. We affirm the circuit court.

On 18 August 2018, officers from the Arkansas County Sheriff's Office searched Clingmon's home, and as a result of that search, he was charged with trafficking a controlled substance, possession of marijuana with purpose to deliver, possession of drug paraphernalia with intent to manufacture (cocaine/methamphetamine), possession of drug paraphernalia

with intent to ingest controlled substances (not cocaine/methamphetamine), and possession of controlled substances–Schedule I/II (not cocaine/methamphetamine).

Clingmon moved to suppress the items found in his home explaining that he was not home during the search; that the officers asked his father, who also lived in the home, to let them in; that the officers searched an area purportedly occupied by Clingmon and found certain drugs and/or paraphernalia; and that the officers coerced his father into signing a consent to search other parts of the home where they found drugs and/or contraband. Clingmon conceded that he was on parole and had executed a waiver that authorizes a search of his home by the Arkansas Community Correction Department (ACC) or a certified law enforcement officer anytime, day or night. Nevertheless, he asserted that the officers who conducted the search were "not parole officers and have no supervisory responsibility of parolees pursuant [to] ACC regulations or state law." Clingmon argued that the search was conducted without "reasonable or probable cause" and violated his Fourth Amendment rights under the United States and Arkansas Constitutions as well as subsections 12.5(a) and (b) of the Arkansas Rules of Criminal Procedure. He asked that evidence found both before and after his father's consent be suppressed.

Clingmon also moved to declare unconstitutional Ark. Code Ann. § 16-93-106, which provides as follows:

> (a)(1) A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Department of Community Correction officer to conduct a warrantless search of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or Department of Community Correction officer.

2

(2) A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offense.

(b)(1) A person who will be placed on supervised probation or parole and is required to agree to the waiver required by this section shall acknowledge and sign the waiver.

(2) If the person fails to acknowledge and sign the waiver required by this section, he or she is ineligible to be placed on supervised probation or parole.[1]

Clingmon's argument in this motion was substantially similar to his argument in the motion to suppress; he asserted that the statute violated his Fourth Amendment rights under the United States and Arkansas constitutions as well as subsections 12.5(a) and (b) of the Arkansas Rules of Criminal Procedure. He also stated that the statute "mandates that a parolee execute a waiver of his constitutional rights against unlawful search and seizure as a condition of being paroled." Finally, he contended that the search had been conducted "without probable cause, reasonable cause, or reasonable suspicion" in violation of his constitutional rights.

The circuit court convened a suppression hearing on 17 June 2019. Defense counsel argued that the requirement that a search pursuant to the statute be conducted in a "reasonable manner" fell below the standards of either reasonable suspicion or probable cause and thus violated Clingmon's constitutional right against unreasonable searches. The State responded that a person who accepts the requirements of parole gives up certain rights, including this Fourth Amendment right.

---

[1]The statute was amended in 2019 to clarify that a "residence" includes a garage or outbuilding on the property of a residence, but the amendment is irrelevant to this appeal.

Deputy Steven Bobo's testimony revealed that he and two other officers visited the home that Clingmon shared with his father because he (Bobo) had received a call from the prosecutor's office and been advised of possible criminal activity by Clingmon. No one was home, so Bobo contacted Edward Clingmon, Alax's father, who agreed to come to the house. Bobo explained to Edward that Alax had signed a search waiver pursuant to his parole agreement, and Edward let the officers into the house and showed them where Alax's room was located. The officers began searching the bedroom and attached bathroom, and Deputy Ronnie Carr found suspected methamphetamine and ecstasy pills in the pocket of a jacket hanging on the wall. In the bathroom, Deputy Jimmy Carr found digital scales, baggies, gloves, and plastic bag full of a "crystal-like substance" that the officers believed to be methamphetamine. Deputy Bobo asked Edward for permission to search the rest of the house, and Edward signed a consent to search. The officers found a "little bit of marijuana" and some marijuana cigarette butts in the kitchen. On cross-examination, Bobo agreed that he had never been employed by the Arkansas Department of Correction or the Department of Community Punishment, nor did he exercise any supervisory responsibility over Clingmon as a parolee. Bobo did not recall if he contacted Clingmon's parole officer prior to the search, but he agreed that there was no parole officer present at the time of the search.

After hearing further arguments from counsel, the circuit court found that the statute is "reasonable and constitutional," that it extends the right to conduct a warrantless search of parolees to community-correction officers and law enforcement officers, and that it requires the search be done in a reasonable manner but does not require reasonable

4

suspicion. The circuit court denied both the motion to declare the statute unconstitutional and the motion to suppress.

Clingmon entered a conditional plea of guilty to trafficking a controlled substance, preserving his right to appeal the denial of the motions, and was sentenced to twenty years' imprisonment. The remaining charges were nolle prossed. Clingmon has timely appealed the sentencing order.

## I. *Constitutionality of the Statute*

The appellate courts will review both the circuit court's interpretation of the constitution as well as issues of statutory interpretation de novo because it is for these courts to determine the meaning of a statute. *See Arnold v. State*, 2011 Ark. 395, 384 S.W.3d 488. In considering the constitutionality of a statute, the appellate courts recognize the existence of a strong presumption that every statute is constitutional. *Brown v. State*, 2015 Ark. 16, 454 S.W.3d 226. An act should be struck down only when there is a clear incompatibility between the act and the constitution. *Id*.

Our supreme court has recognized that supervision of probationers is a "special need" of the state, permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. *Cherry v. State*, 302 Ark. 462, 467, 791 S.W.2d 354, 356–57 (1990) (citing *Griffin v. Wisconsin*, 483 U.S. 868 (1987)). The special needs of the parole process call for intensive supervision of the parolee making the warrant requirement impractical. *Id*. A parolee has a diminished expectation of privacy, as legally he is still in the custody of the penal institution from which he was released. Ark. Code Ann. § 16-93-701(b)(3) (Supp. 2015).

Clingmon asserts that in order to be eligible for parole, he was required to sign a waiver of his Fourth Amendment rights against unlawful search and seizure, and that if he refused to sign the waiver, he would be ineligible for parole. Thus, he argues that signing the waiver is "coerced." He also contends that under Arkansas Supreme Court case law, "parole officers may carry out searches only if reasonable grounds exist to investigate whether the parolee had violated the terms of his parole." *Lane v. State*, 2017 Ark. 34, at 3, 513 S.W.3d 230, 233 (citing *Cherry v. State*, 302 Ark. 462, 791 S.W.2d 354 (1990)). He contends that interpreting the statute as the state and the circuit court have done "effectively nullifies the Fourth Amendment rights of a parolee" and authorizes police to conduct a search "without any legal criteria, limitation, or restraints." Clingmon contends that because the statute does not require reasonable cause for the search, it is "rife with potential for abuse" and should be declared unconstitutional.

The State counters that Clingmon's argument ignores United States Supreme Court case law interpreting similar statutes as constitutional. In *Samson v. California*, 547 U.S. 843 (2006), the Court applied a totality-of-the-circumstances test to a suspicionless search of a parolee conducted pursuant to a California law that provided that as a condition for release, every prisoner eligible for state parole must agree to be subject to a search or seizure by a parole officer or other peace officer with or without a search warrant and with or without cause. Samson, a parolee, was stopped while walking down the street and subjected to a search, revealing a plastic bag filled with methamphetamine. He argued that the warrantless search violated the Fourth Amendment even though it was authorized by statute.

6

The Court in *Samson* considered all the facts of the case in context, including (1) the specific provisions of the authorizing statute; (2) the great state interest in reducing recidivism; (3) the fact that the petitioner was serving an active prison sentence, that he was given the choice to either remain incarcerated until the end of his sentence or agree to certain terms of parole and serve the remainder of his sentence outside of prison; and (4) by choosing parole, he knowingly and purposefully accepted its conditions. The Court held that the petitioner's reasonable expectation of privacy, for the purpose of his Fourth Amendment challenge, was severely diminished based on the facts and context of his case and that the Fourth Amendment does not per se "prohibit a police officer from conducting a suspicionless search of a parolee" if the parolee has accepted a specific condition of parole, authorized by statute, that requires the parolee to submit to warrantless searches. *Id*. at 857. In other words, the Court upheld suspicionless searches of parolees pursuant to a state statute allowing for such searches.

The State argues that Clingmon's argument relies on an outdated analysis; *Cherry* was decided before Ark. Code Ann. § 16-93-106 was enacted, and *Lane*, while decided after the enactment of the statute, relied on language from *Cherry*. The State asserts that following *Samson*'s reasoning, "Clingmon's significantly diminished expectation of privacy as a parolee, particularly when balanced against the State's substantial interest in its parole-release system, renders the warrantless, suspicionless search by police officers reasonable and, consequently, the parole scheme mandated by section 16-93-106 meets constitutional muster."

7

Clingmon replies that *Samson* is distinguishable because (1) the statute and waiver at issue in *Samson* provided for a warrantless and suspicionless search of a parolee, while Ark. Code Ann. § 16-93-106 requires some level of suspicion that the parolee is committing or has committed a crime; and (2) *Samson* involved a search of a parolee's person in a public setting, while the present case involves a search of a parolee's home. Clingmon suggests we find guidance in *United States v. Knights*, 534 U.S. 112 (2001), which held that the warrantless search of a probationer's apartment—based on both a probation-search condition and reasonable suspicion of criminal activity—was reasonable within the meaning of the Fourth Amendment.

In *Knights*, California law required Knights, as a probationer, to "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114 (brackets in original). Several days after Knights had been placed on probation, police suspected that he had been involved in several incidents of arson and vandalism. Based upon that suspicion and pursuant to the search condition of his probation, a police officer conducted a warrantless search of Knights's apartment and found arson and drug paraphernalia. The Ninth Circuit Court of Appeals found the search was invalid because it was conducted for investigatory rather than probationary purposes. The Supreme Court rejected this distinction, noting that nothing in the probationer's search condition suggested it was confined to searches bearing upon probationary status.

In analyzing the search, the Court applied a general Fourth Amendment analysis and concluded that the probationer's acceptance of a clear and unambiguous search condition

8

"significantly diminished [the probationer's] reasonable expectation of privacy." *Id*. at 120. The Court held that the warrantless search of the probationer's apartment, based on both a probation-search condition and reasonable suspicion of criminal activity, was reasonable within the meaning of the Fourth Amendment. The court expressly declined to decide whether a probation search without reasonable suspicion satisfies the reasonableness requirement of the Fourth Amendment.

Clingmon interprets *Knights* to hold that a parole officer or certified law enforcement officer *must* have a reasonable suspicion that the parolee is committing or has committed a criminal offense in order to comport with the parolee's Fourth Amendment rights. He argues that his expectation of privacy is not "wholly defeated" by his parole status and notes that "[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). He contends that a call from the prosecutor's office is insufficient to provide reasonable suspicion and later insists that there is "no evidence in the record to explain the reason" for the search of his home.

This is the first opportunity this court has had to address the constitutionality of Ark. Code Ann. § 16-93-106.[2] We begin with Clingmon's assertion that his waiver of consent was coerced. It was not. He freely and voluntarily signed the waiver with full knowledge of its conditions. Second, we agree with the State that the Arkansas Supreme Court cases cited by Clingmon are inapplicable; *Cherry* was decided long before enactment of the statute,

[2]The statute was enacted as part of the Criminal Justice Reform Act of 2015, and its stated intent was to enhance public safety and reduce the prison population.

9

and the language in *Lane* cited by Clingmon relied on *Cherry* as authority. Clingmon's reliance on *Knights* is also misplaced, as that opinion expressly left open the question of whether a probation search without reasonable suspicion satisfies the reasonableness requirement of the Fourth Amendment.

Contrary to Clingmon's point that some level of suspicion is required by the statute, the statutory language is clear that reasonable suspicion is *not* required. So we are faced with the same question addressed by the *Samson* Court: "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson*, 547 U.S. at 847. The Supreme Court answered that question in the affirmative. *Samson* made clear that the Fourth Amendment does not per se "prohibit a police officer from conducting a suspicionless search of a parolee" if the parolee has accepted a specific condition of parole, authorized by statute, that requires the parolee to submit to warrantless searches. *Id*. at 857. Finally, we disagree with Clingmon's assertion that the statute leaves law enforcement unrestrained in its actions; the statute requires that searches be conducted in a "reasonable manner." Ark. Code Ann. § 16–93–106(a)(2). Therefore, we hold that Ark. Code Ann. § 16–93–106 is constitutional.

## II. *Motion to Suppress*

Clingmon argues that there were no reasonable grounds for the officers to believe he had violated the terms of his parole and that the search was not conducted in a reasonable manner because no parole officer was present, the officers had no supervisory authority over him, and his parole officer was not contacted before the search. Therefore, the warrantless

10

search by the officers was invalid, and the circuit court's denial of his motion to suppress should be reversed. Because we have established that the statute is constitutional and does not require a "reasonable-grounds" basis for a search, Clingmon's only remaining argument for suppression lies in his assertion that the search was not conducted in a reasonable manner. This argument was not developed below or ruled on by the circuit court, so we will not address it. *Stover v. State*, 2017 Ark. 66, 511 S.W.3d 333.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*McKissic & Associates, PLLC*, by: *Gene E. McKissic, Sr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

11