Cite as 2021 Ark. App. 400

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CR-21-128

| | |
|---|---|
| JIMMY MARION BAUGH<br>APPELLANT | **Opinion Delivered** October 20, 2021 |
| V. | APPEAL FROM THE LINCOLN COUNTY CIRCUIT COURT<br>[NO. 40CR-19-18] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE ALEX GUYNN, JUDGE |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Jimmy Baugh appeals the amount of restitution ordered by the Lincoln County Circuit Court after he pleaded guilty to the offense of obstructing governmental operations. The events leading up to his plea involved cattle belonging to his neighbor, Gerry Harris. Harris's cattle crossed over to Baugh's land through a broken fence in January 2019 and remained on Baugh's land. Baugh ultimately paid to have the cattle rounded up and taken to auction, where eight cows and a calf belonging to Harris were sold for $4,204.27. After deducting expenses, Baugh delivered the remainder of the proceeds, $2,860.97, in the form of a check to the Lincoln County Sheriff's Office in the name of both the sheriff's office and Harris. Harris claimed he lost thirteen cattle due to Baugh's actions. Because the amount of restitution due Harris could not be agreed on, a hearing was held in June 2020. The Lincoln County Circuit Court ordered Baugh to pay Harris $12,008.54 in restitution. Baugh now appeals, arguing that the restitution amount was excessive and not consistent

with the value of the cattle; the circuit court erred in relying on the testimony of State witness Aubrey Barksdale, because the State failed to offer any proof as to the value of the lost property at the time it was sold; there was no actual economic loss to Harris; and the appropriate measure of loss was eight cows and one calf, not thirteen cows. We affirm.

A defendant who is found guilty or who enters a guilty plea or nolo contendere to an offense may be ordered to pay restitution. Ark. Code Ann. § 5-4-205(a)(1) (Supp. 2021). The sentencing authority, whether the circuit court or a jury, shall make a determination of actual economic loss caused to the victim by the offense. Ark. Code Ann. § 5-4-205 (b)(1). In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the circuit court, but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *El Paso Prod. Co. v. Blanchard*, 371 Ark. 634, 269 S.W.3d 362 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*

Baugh's first two points are best addressed together. He argues the amount of restitution ordered by the circuit court was excessive and inconsistent with the actual value of the cattle, and relying on the testimony of Harris and Barksdale was erroneous because the State offered no proof as to the value of the cattle at the time they were was sold. Baugh contends that the only valuation of the cattle was $4,204.27, the amount the eight cows and one calf brought at auction.

Harris testified at the restitution hearing that thirteen head of his cattle ended up on Baugh's property due to a fence that had washed out. Harris claimed that he tried to retrieve his cattle, but the gates were locked, and Baugh would not allow him to access the gates and refused to return the cattle to him. Harris said he called the police, who came out to attempt to assist, but Baugh would not respond to them. Harris said he later learned that Baugh had sold eight cows and one calf, but he claimed that the cattle were not sold at a fair price because the market was low. He explained that the cows were bred cows (cows due to have calves that had been bred with his bull), that he earned some of his money from selling the calves after they were born, and that there was no reason for him to sell the cows at that point because he was using them to produce calves. Harris testified that the value of the nine cows sold was about $8,400, and the value of the other four cows was $1,200 each and another year's crop of calves. He said he did not just lose the cows in question but also what they could have made by producing calves.

Aubrey Barksdale testified that he is familiar with the cattle business and has a good eye for what cattle should look like and what they sell for; he explained that the value of an animal at any given time is not really its value on the open market. Barksdale testified that cows that were pregnant would be worth anywhere from $1,000 to $1,150 but that most people would not sell young cows because the younger the cows were in the herd, the longer longevity there was for the herd. Barksdale admitted on cross-examination that his estimates relied on Harris's assertions that the cows were all young and pregnant, and he agreed that a calf would probably not be worth as much as a pregnant cow.

Baugh claimed Harris's cows were wild and starving. He testified that one of his employees called Harris about the cattle, but Harris never came to get them, so after about ten days, he had the cattle rounded up and taken to auction, where they were sold. Baugh blamed the price Harris's cattle brought on their poor condition. Baugh said that he did not keep any of Harris's cattle, but he admitted that he had some of Harris's cattle in his holding pen that he had turned out because he had to use the pen. Baugh asserted those cows either went to Harris's property or to another neighbor's property after they were released.

Baugh cites *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006), in support of his argument that the amount the cattle brought at auction should be the amount of restitution owed. In *Jester*, the circuit court ordered that $180,000 be paid as restitution for wrongfully cut timber; our supreme court affirmed that figure, holding that restitution for the unauthorized cutting of timber should represent the value of the trees as they stood on the property before they were cut down and milled because the goal of restitution is to make the victim whole, and the restitution amount "should accurately reflect the amount of economic loss" suffered by the victim. *Jester*, 367 Ark. at 254, 239 S.W.3d at 489.

*Jester* supports the circuit court's restitution award in this case. Disputed facts and credibility determinations are within the province of the fact-finder. *El Paso Prod. Co.*, *supra*. Harris testified that he would not have sold his cattle in January 2019 because they were young and used for breeding and that he earned some of his money by selling the calves after they were born. He estimated the nine cows sold were worth $8,400, and the other missing cows were worth $1,200 each. The circuit court had evidence before it, if

4

determined to be credible, that would support the amount of restitution ordered. We cannot say the circuit court's decision is clearly erroneous.

In his next point, Baugh argues that the testimony at the restitution hearing suggested there was no actual economic loss to Harris because Relyance Bank had loaned Harris money and had taken a security interest in a herd of cattle; Harris had defaulted on the loan; and Relyance had obtained an order of delivery for the herd of cattle in September 2018. Steve White, vice president of agricultural lending at Relyance, testified that Harris did not turn over the cattle, telling Relyance in January 2019 that the cattle were deceased and that he did not own any cattle. White did not know if the cattle in which Relyance had a security interest were the same cattle sold by Baugh or the other missing cattle.

Baugh argues on appeal that because Relyance had obtained an order of delivery of its collateral in September 2018, and Harris lied about not owning cattle in January 2019, Harris suffered no actual economic loss. He contends that the issue is who is entitled to restitution, suggesting that Relyance is "likely the party entitled to the sales proceeds" given its order of delivery and arguing that if the circuit court's decision is affirmed, Harris will receive restitution resulting from the sale of cattle to which he had no right to possess.

However, at the restitution hearing, Baugh's only argument was that if the circuit court ordered restitution, Relyance would have to be included on the check because it had an order of delivery. Baugh has changed his argument on appeal; therefore, it cannot be addressed. Parties are bound on appeal by the scope and nature of the objections and arguments presented at trial, and arguments that have not been raised at trial will not be addressed. *Milton v. State*, 83 Ark. App. 42, 137 S.W.3d 402 (2003). Because Baugh did

5

not raise this argument to the circuit court, we are precluded from reaching it on appeal. *Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009).

In his last point, Baugh contends that the record of the restitution hearing includes "suggestions" that he stole thirteen of Harris's cows. He argues that this court should reject that contention and make clear that the proper amount of restitution should reflect only the eight cows and one calf he delivered to the livestock auction. Citing *Bogard v. State*, 2014 Ark. App. 700, at 3-4, 450 S.W.3d 690, 691, he states that "it is error for a defendant to be ordered to pay restitution for offenses with which he has not been charged or to which he did not plead guilty or no contest." Baugh conceded he sold eight cows and one calf and admitted penning four additional cows that were released and whose whereabouts are unknown. He now argues that because he had not pleaded guilty to, or been convicted of, stealing thirteen cows, he cannot, as a matter of law, be ordered to pay restitution for more than nine head of cattle.

There was not a number of cows specified at the plea hearing where Baugh pleaded guilty to obstructing governmental operations. Harris testified at the restitution hearing that he was missing a total of thirteen cows. As discussed above, there was evidence before the circuit court that would support the amount of restitution ordered.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*ARK AG LAW, PLLC*, by: *J. Grant Ballard*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.