Cite as 2022 Ark. App. 232

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-21-306

| | | |
|---|---|---|
| TODD HALL | | OPINION DELIVERED MAY 18, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-19-2323] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRAD KARREN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**ROBERT J. GLADWIN, Judge**

Todd Matthew Hall appeals his conviction in the Benton County Circuit Court on one count of failure to comply with registration, a Class C felony, in violation of Arkansas Code Annotated section 12-12-904 (Supp. 2021), for failure to report a social-media application and as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501(b)(1) (Supp. 2021). He argues that (1) when strictly construed in harmony, Arkansas Code Annotated sections 12-12-904(a)(1)(A)(i), -906 (Supp. 2021), -908(b) (Supp. 2021), and -909(b)(1)(D) (Supp. 2021) of the Sex Offender Registration Act of 1997 (the "Act") only require a lifetime sex offender or a sexually dangerous sex offender to submit to the social-media-reporting rules; (2) those same sections of the Act lack sufficient definiteness to provide notice and, therefore, are void for vagueness; and (3) the circuit court committed

clear error when denying Hall's motion to suppress evidence based on an illegal search and seizure of his cell phone. We affirm.

I. *Facts and Procedural History*

On June 29, 2006, Hall pleaded no contest to second-degree sexual assault in Benton County case number 04CR-05-666; consequently, he was required to register as a sex offender. Hall subsequently was convicted of multiple offenses in Washington County, and he was released on parole for those convictions on May 24, 2018.[1] As a condition of his release, Hall signed a waiver giving Arkansas Community Correction officers permission to search his person, property, vehicle, or residence without a search warrant. He also signed a warrantless search waiver giving parole officers and certified law enforcement officers the ability to search his person, residence, or vehicle without a search warrant. Hall signed "Sex Offender Acknowledgement Forms" on May 29, 2018; May 20, 2019; July 15, 2019; and August 26, 2019, acknowledging the requirement that pursuant to Arkansas Code Annotated section 12-12-906, Arkansas state law requires the offender to report any changes in . . . *social network information* IN Person to the local law enforcement agency having jurisdiction at that time of the change. Hall registered and verified another social-media platform—"Facebook"—on the "Sex Offender Verification Form" signed on May 29, 2018, and August 26, 2019.

---

[1]Hall was convicted of failure to comply with sex-offender registration in case number 72CR-16-1717, second-degree forgery in case number 72CR-17-74, and possession of a controlled substance in case number 72CR-16-2371.

Hall's assigned parole officer was Allishia Mace, and one of his parole conditions was to meet with Officer Mace twice monthly. Hall reported to Officer Mace on September 4, 2019, and she scheduled the next meeting for September 19. An automated text-message reminder was generated for the September 19 scheduled meeting. Officer Mace later called Hall on September 12 to reschedule the meeting for September 18 due to a conflict. Hall confirmed the new date over the phone, and Officer Mace entered the new date into the system. On September 18, however, Hall failed to report to Officer Mace as required. He reported to Officer Mace the following day, at which time Officer Mace asked why he failed to report on the 18th. Hall explained that he had received a text-message reminder stating that his scheduled visit was September 19.

Fellow parole officer, Lacey Maybee, overheard the conversation from her office located across the hall from Officer Mace's office. Officer Maybee walked across the hall to verify Harp's assertion that he had received a text-message notification and asked for his phone. Hall informed the parole officers that his cell phone was in his vehicle and handed Officer Maybee his keys to retrieve the cell phone from the vehicle. When Officer Maybee returned, Hall unlocked his cell phone and handed it back to Officer Maybee to look through his text messages for the text-message reminder.

Regarding what Hall claims was an extensive search of his cell phone and its contents, including various installed applications, Officer Maybee testified:

> [A]t the time, th[ese] text message reminders were very new to us. We don't know who they're coming from, neither do the parolees. So, they're confused. They think that they're coming from us, and we don't know what numbers they're coming

3

from. So, I'm looking through the text messages to find this random number. And so, I'm looking through the text messages and at that point I'm—as I'm looking, I see other parole violations and then proceed from there.

As Officer Maybee was looking through Hall's text messages to find the reminder, she saw evidence of other possible parole violations, including the social-media app called Tinder, downloaded on his phone. Officer Mace did not think that the Tinder account had been registered in the sex-offender system as required. Officer Maybee found the text-message reminder, gave the cell phone to Officer Mace, and explained that she may have found evidence of parole violations on Hall's phone, which prompted further examination.

Officer Mace then verified with Detective Paul Newell that Hall had not registered his Tinder account on either the initial form or the ones submitted on the subsequent dates previously listed, despite the fact that Hall was required to report to him twice yearly to verify the required sex-offender information, including Hall's social-media accounts. Officer Mace gave Hall's phone to the Benton County Sheriff's Office for further examination, and the extraction report indicated activity on Hall's Tinder account dating back to 2017.

On November 1, 2019, the State charged Hall, a registered sex offender, with failing to comply with reporting requirements, specifically alleging that Hall had failed to register or verify his Tinder social-media account.

On October 7, 2020, Hall filed a motion to suppress the evidence discovered on his cell phone during the warrantless search of his cell phone during the October 19, 2019 meeting at Officer Mace's office. The parties agreed to allow the circuit court to consider Hall's motion to suppress during the bench trial because the witnesses and evidence to be

4

considered would be the same. On November 30, a hearing was held, and the circuit court determined that Hall's constitutional rights were not violated by the warrantless cell phone search conducted by Officer Maybee because at that time, Hall was both a registered sex offender and a parolee.

During the bench trial, Hall stipulated that he was required to register as a sex offender and that he was required to verify his sex-offender status. He further stipulated that the Tinder account found on his cell phone was his.

According to Hall, he signed a limited warrantless search waiver as a condition of his parole, which permitted law enforcement to search only his person, residence, or motor vehicle. He claimed that his personal property, i.e., his cell phone, was not included in the warrantless search waiver. Hall asserted that the signed conditions of release did not notify him that evidence seized from a warrantless search could be used to convict him of a new criminal offense.

The State explained in response that when Hall was placed on parole in 2018, he signed conditions of release permitting a parole officer to search his person, property, vehicle, or residence at any time without a warrant. The circuit court rejected Hall's arguments and denied his motion to suppress, reasoning that he "was clearly notified by his condition of release that he [was] subject to warrantless searches of his person, property, place of residence, and motor vehicle."

After the State rested, Hall moved to dismiss, arguing that the State had failed to prove that he was guilty of failing to comply with registration requirements because (1) under

section 12-12-906, only sex offenders subject to lifetime registration are required to verify their social-media accounts; (2) section 12-12-908 likewise +does not impose a requirement for him to verify his social-media accounts; and (3) without elaboration, the sex-offender statutes are void for vagueness. When asked by the circuit court, Hall admitted that he had failed to notify the Arkansas Attorney General that he was challenging the constitutionality of the sex-offender-registration statutes.

The defense rested without presenting evidence or witnesses, and Hall renewed his motion to dismiss. He again mentioned that the sex-offender-registration statutes are "void for vagueness" because "it's not a crime for [a sex offender] not to report a social media app." The circuit court "cut and paste[d] [its] earlier ruling" and did not include a substantive ruling on Hall's void-for-vagueness argument. The circuit court reasoned that it lacked jurisdiction to decide the issue because Hall had failed to notify the Attorney General of his challenge to the constitutionality of the statute.

The circuit court found Hall guilty of failing to comply with reporting requirements and sentenced him as a habitual offender to thirty-six months' imprisonment pursuant to a sentencing order filed on December 3. An amended sentencing order was filed on December 7 to correct the box checked for Hall's gender. On December 17, Hall filed a timely notice of appeal.

II. *Standard of Review and Applicable Law*

In bench trials, the standard of review on appeal is not whether there is substantial evidence to support the finding of the circuit court but whether the court's findings were

6

clearly erroneous or clearly against the preponderance of the evidence. *Baugh v. State*, 2021 Ark. App. 400, at 2, 635 S.W.3d 9, 11. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.* However, questions of statutory construction and application are reviewed de novo because it is for the appellate courts to decide the meaning of a statute. *Krol v. State*, 2018 Ark. App. 512, at 6, 563 S.W.3d 586, 589.

When an appellate court construes a criminal statute, it must be strictly construed resolving all doubts in favor of the defendant. *Smith v. State*, 2020 Ark. 410, at 5–6. But even a criminal statute must not be construed so strictly as to defeat the obvious legislative intent. *Id.* Additionally, when construing any statute, the court places it beside statutes relating to the same subject to be construed together and in harmony, if possible, to derive the meaning and effect from the whole. *Id.*

III. *Discussion*

A. Applicability of Arkansas Social-Media-Reporting Statutes

Hall submits that the plain and ordinary meaning of the text of Arkansas Code Annotated sections 12-12-904(a)(1)(A)(i), -906, -908(b), and -909(b)(1)(D) of the Act provide that only a lifetime or sexually dangerous sex offender is subject to the social-media-reporting requirements. He argues that the circuit court's ruling that those requirements apply to him should be reversed because those statutes do not apply to an offender of Hall's status.

7

Arkansas Code Annotated section 12-12-904(a)(1)(A)(i) states: "A person is guilty of a Class C felony who: (i) Fails to register or verify registration as required under this subchapter." Section 12-12-906 outlines the duty to register or verify registration generally. Section 12-12-906(g) is the only section that addresses registration of social-media-account information:

> (1) Except as provided in subsection (h) of this section, *a sex offender subject to lifetime registration* under § 12-12-919 shall report in person every six (6) months after registration to the local law enforcement agency having jurisdiction to verify registration.
>
> . . . .
>
> (3) Registration verification shall include reporting in person any change to the following information concerning the sex offender:
>
> . . . .
>
> (T) All social media account information.

(Emphasis added.)

Section 12-12-908(b) outlines the format requirements for registration, stating: "The registration file required by this subchapter shall include: . . . . (22) All social media account information." And section 12-12-909(b)(1)(D) outlines the verification form required for a change of address for a sex offender:

> Other than a change of address as provided in subdivision (b)(1)(A) of this section, a sex offender shall report a change of any other information required to be reported at registration under § 12-12-908 or required to be reported at the time of verification under § 12-12-909.

Hall contends that when placed together, giving these statues their plain and ordinary meaning, only a sex offender subject to lifetime registration is required to report "all social media account information." Ark. Code Ann. §§ 12-12-906, -908(b). Additionally, he maintains that they require a verification form for a "change of any other information *at the time of verification*." Ark. Code Ann. § 12-12-909(b)(1)(D) (emphasis added).

Hall maintains that he was not required to report his social-media information at the time of verification because he was not subject to lifetime registration or deemed a sexually dangerous offender. Rather, as a lower-level offender subject to standard reporting requirements, he need only report a change of address and other information that was reported at the time of verification, which does not include social-media applications.

Moreover, Hall argues that the circuit court's ruling should be reversed because when the applicable statutes are viewed through the lens of legislative intent, they should apply only to lifetime or sexually dangerous offenders. Hall submits that as the Act has been amended, the legislature has intentionally added the language "lifetime" and "sexually dangerous offender" to the social-media-registration requirements, indicating a clear intent to narrow the application to only the most serious of offenders. He notes that in 2013, the legislature amended section 12-12-906 to change the language "violent predator" to "sexually dangerous." *See* Ark. Code Ann. § 12-12-906 (Supp. 2013). And in 2017, the legislature amended section 12-12-906(h)(7) to add the language "sexually dangerous" to the in-person-reporting requirement. *See* Ark. Code Ann. §12-12-906(h)(7) (Supp. 2017).

It is undisputed that Hall was not required to report as a lifetime or sexually dangerous offender; accordingly, he urges that he was not required to report his social-media applications at either the initial or subsequent verifications. And he argues that his conviction for failing to comply with registration should be reversed because he was not charged with failing to report an address change, merely his Tinder social-media application.

We disagree and hold that the circuit court did not commit reversible error in finding that the sex-offender-registration statutes did require Hall to register and verify his social-media-account information. At trial, Hall acknowledged that (1) he is a convicted sex offender; (2) he is required to register and verify his status; and (3) the Tinder account in question belongs to him. Detective Newell and Officer Mace testified that Hall had never registered or verified his Tinder account at any time since his release from incarceration in May 2018.

Pursuant to the Act, a person who has been adjudicated guilty of a sex offense must register as a sex offender using a registration form prepared by the Arkansas Crime Information Center. *See* Ark. Code Ann. § 12-12-906(a)(1)(A)(ii); *Adkins v. State*, 371 Ark. 159, 161, 264 S.W.3d 523, 524 (2007). A sex offender who "[f]ails to register or verify registration as required under this subchapter" is guilty of a Class C felony. Ark. Code Ann. § 12-12-904(a)(1)(A)(i). The sex-offender-registration requirements are mandatory, and the failure to comply with registration is a strict-liability offense. *E.g.*, *Blanton v. State*, 2022 Ark. App. 44, at 2.

Hall's argument completely ignores section 12-12-908, which applies to all sex offenders required to register, not solely to those offenders subject to lifetime registration. He was neither charged with nor convicted of failing to comply with the requirements for a sex offender subject to lifetime registration under section 12-12-906(g), (h); rather, he failed to comply with section 12-12-908. Any offender required to register as a sex offender, regardless of whether the offender is subject to lifetime registration, must register the information listed in section 12-12-908 to the appropriate agency. *See* Ark. Code Ann. § 12-12-906(a)(1)(A)(ii). Section 12-12-908(b)(22) requires every sex offender to register the offender's "social media account information" at the time of registration. Every six months, the offender is then required to "verify" his or her registration information, *see* Ark. Code Ann. § 12-12-909(a)(1), including  any social-media accounts. Thus, because Hall was undisputedly subject to registration requirements, he was required to register his social-media-account information at the time of registration and, subsequently, to verify the information every six months. Because Hall failed to do so, we affirm the circuit court's finding that he violated Ark. Code Ann. § 12-12-904 for failure to report a social-media application and as a habitual offender, pursuant to Ark. Code Ann. § 5-4-501(b)(1).

## B. Void-for-Vagueness Argument

With respect to Hall's constitutional argument that the statutes in question are void for vagueness, this court recently held:

> The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

11

discriminatory enforcement. *Anderson v. State*, 2017 Ark. 357, 533 S.W.3d 64. When challenging the constitutionality of a statute on grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent" who has not received fair warning that certain conduct has been prohibited. *Id.* However, if, by his action, that individual clearly falls within the conduct prohibited by the statute, he cannot be heard to complain. *Id.*

*See, e.g.*, *Howton v. State*, 2021 Ark. App. 86, at 10–11, 619 S.W.3d 29, 37 (citing *Anderson v. State*, 2017 Ark. 357, at 4, 533 S.W.3d 64, 67); *see also Bynum v. State*, 2018 Ark. App. 201, at 9–10, 546 S.W.3d 533, 540–41. A statute should be definite so that it does not encourage arbitrary and discriminatory enforcement. *Howton*, *supra.*

Hall submits that he qualifies as one of the "entrapped innocents" because he followed and completed the proper initial registration and subsequent verification requirements imposed on him as a sexual offender and did not have proper notice that he was required to follow any social-media-reporting requirements specifically imposed on lifetime or sexually dangerous offenders. Hall maintains that he did not attempt to hide any information because he was unaware that any of his actions were prohibited by his status as a sexual offender.

Hall submits that the relevant statutes lack consistency as to what subsections apply to various levels of offenders and, specifically, whether the social-media subsection applies to all sexual offenders required to register or only lifetime or sexually dangerous offenders. Hall argues that this lack of definiteness creates speculation because the language in the statutes switches back and forth between "sex offender" and "lifetime and sexually dangerous persons" when referencing social-media applications and reporting changes of initial

12

verification requirements. Hall argues that the failure to provide clear and definite notice as to which subsection(s) a sex offender is subject to creates a danger that these requirements will be applied on a case-by-case basis rather than consistently among registering sex offenders. Accordingly, Hall submits that the circuit court's ruling should be reversed.

We disagree. We first address the State's argument that this issue was not properly preserved for our review because the circuit court declined to rule on the merits of Hall's argument, finding only that it lacked jurisdiction to decide the issue because Hall had not notified the Attorney General that he was challenging the constitutionality of the statutes. *See, e.g.*, *Newman v. State*, 2019 Ark. App. 38, at 6, 567 S.W.3d 110, 113; *Anderson*, 2017 Ark. 357, at 3–4, 533 S.W.3d 64, 67.

Despite the circuit court's stating that it did not have proper jurisdiction to decide the vagueness issue because Hall failed to notify the Attorney General, it specifically addressed the void-for-vagueness argument before it and did provide a ruling.

MR. MILLER:     And last, the void for vagueness argument because we do believe our reading is reasonable, and a reasonable reading of the statute would indicate that somebody that's not guilty—that's only guilty of a sex offense can't be––it's not a crime for them to not report a social media app.

THE COURT:     Got you. All right, the Court has already made—and I'm going to ask the Court Reporter to cut and paste my earlier ruling.

. . . .

But I do want to add a couple of things as to the void for vagueness argument. I have given the defense and opportunity to continue this trial, which they rejected and did not, which would allow them to contact the Attorney General's Office if

13

they wanted to do an issue as concerning a constitutional argument on the statute. Also, as to—Go ahead, Mr. Miller.

. . . .

All right, let me go—let me go read about this Attorney General thing because to be honest with you I just don't recall.

. . . .

I've had an opportunity to go back and consider my—your motion, Mr. Miller, about continuing this trial. The Arkansas Supreme Court has exclusive jurisdiction on whether to hear whether a statute is constitutional. In cases challenging the constitutionality of a statute, the Arkansas Attorney General is a required party. The Arkansas Attorney General has not been made a party to this action. This court does not have jurisdiction to rule on the constitutionality on whether this statute is void for vagueness. Your motion for a continuance for Defendant to modify—I'm sorry, as to the motion for continuance for Defendant to notify the AG, this court finds the defendant was not diligent in notifying the AG of its void for vagueness argument, that testimony and evidence has concluded, that both parties have rested. Even if the AG were allowed to be a party to this action, they would be prohibited to present any evidence as to the issue. Your motion is denied.

Hall notes that the circuit court deliberated over the issue and erroneously ruled that it did not have jurisdiction on the issue because there was no notification to the Attorney General's office. He cites *Carney v. State*, 305 Ark. 431, 434–35, 808 S.W.2d 755, 756–57 (1991), for the propositions that because this was a criminal matter rather than a civil case, notification to the Attorney General's office was not required because the State was automatically a party to the action and was represented by the prosecuting attorney. *Carney*, 305 Ark. App. at 434–35, 808 S.W.2d at 756–57.

14

We hold that Hall has failed to meet his burden of proof related to the constitutional challenge to the statutes in question. In considering the constitutionality of a statute, this court presumes that the statute is constitutional, and the burden of proving otherwise is on the challenger of the statute. *E.g.*, *Howton*, 2021 Ark. App. 86, at 3, 619 S.W.3d at 34. "An act should be struck down only when there is a clear incompatibility between the act and the constitution." *Clingmon v. State*, 2021 Ark. App. 107, at 5, 620 S.W.3d 184, 187. If possible, this court will construe a statute so that it is constitutional. *E.g.*, *Anderson*, 2017 Ark. 357, at 3, 533 S.W.3d at 67.

A statute will pass constitutional scrutiny if the language conveys sufficient warning when measured by common understanding and practice. *E.g.*, *Reinert v. State*, 348 Ark. 1, 4, 71 S.W.3d 52, 54 (2002). The constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the facts at issue. *E.g.*, *Anderson*, 2017 Ark. 357, at 4, 533 S.W.3d at 67.

Contrary to his assertion, Hall's failure to register or verify his social-media account falls within that proscribed by the statutes. Moreover, Hall received actual notice, in addition to the statutes, that he was required to register and verify his social-media account. On May 29, 2018, Hall signed a sex-offender-acknowledgment form, which listed reporting and verification requirements for sex offenders. Paragraph 2 states: "Pursuant to **§ 12-12-906**, Arkansas state law requires the offender to report any changes in residence, mailing address, temporary domicile, employment, email, *social network information* **IN Person** to the local law enforcement agency having jurisdiction at the time of the change." (Bold emphasis in

15

original, italics added.) Hall signed similar acknowledgment forms requiring the disclosure of social-media accounts on three subsequent occasions—May 20, July 15, and August 26, 2019. These signed acknowledgment forms put Hall on notice that he was required to register and verify his social-media-account information. Moreover, he did, in fact, register and verify one of his social-media accounts, a Facebook account, and provided a related email address. He, however, specifically failed to ever register or verify his Tinder social-media account. Because Hall failed to meet the requisite burden of proof regarding his constitutional void-for-vagueness challenge to the sex-offender social-media-registration statutes, we hold no reversible error was committed by the circuit court on this issue.

## C. Denial of Hall's Motion to Suppress

Hall also argues that the circuit court committed clear error when it denied his motion to suppress the evidence obtained through the illegal search and seizure of his cell phone. In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Colen v. State*, 2022 Ark. App. 148, at 8, __ S.W.3d __, __. Arkansas appellate courts defer to the superior position of the circuit court to evaluate the credibility of witnesses, and we will reverse the denial of a motion to suppress only if the ruling is clearly against the preponderance of the evidence. *See id.*

Hall's motion to suppress was based on the warrantless search of his cell phone by Officer Maybee. Hall maintains that the signed waivers relied on by Officer Maybee were overly vague and thus failed to provide proper notice of the rights he was waiving. Hall specifically relies on the search waiver stating that he consents to "a warrantless search of my person, place of residence, or motor vehicle at any time." He notes that nothing in that particular waiver states that he was waiving his constitutional right for all *property*, and specifically, nothing states that his cell phone may be searched at any time without specific consent. Additionally, Hall maintains that the other conditions-of-release form that he signed as a condition of parole was overly vague, stating that "[y]ou must submit your person and/or property, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant." Hall argues that this language likewise is not sufficiently specific to clarify that his cell phone may be searched without restriction and without probable cause. He urges that when taken in concert with the other search waiver, the conditions-of-release form fails to clarify the constitutional rights he was waiving.

Hall also argues that Officer Maybee lacked proper reasonable suspicion to search his cell phone beyond the limited scope of consent provided by Hall. Hall acknowledges that he permitted Officer Maybee to search his cell phone for the limited purpose of confirming the text message he received regarding the rescheduled date of his meeting with Officer Mace. But Hall denies providing consent to Officer Maybee to conduct a full-access search of his cell phone. Hall claims that neither Officer Maybee nor Officer Mace had reasonable suspicion that a search of his cell phone was necessary for any other reason. He submits that

17

because the preponderance of the evidence indicates that the circuit court ignored the vagueness of the search waivers, the limited scope of his consent, and the parole officers' lack of reasonable suspicion, the denial of his motion to suppress should be reversed.

We disagree and hold that the circuit court did not err by denying Hall's motion to suppress. The United States Supreme Court has held that parolees can be subject to suspicionless, warrantless searches at any time without violating the Fourth Amendment. *See, e.g., Samson v. California*, 547 U.S. 843, 857 (2006). Moreover, a parolee "has a diminished expectation of privacy, as legally he is still in custody of the penal institution from which he was released." *Clingmon v. State*, 2021 Ark. App. 107, at 5, 620 S.W.3d 184, 187 (citing *Cherry v. State*, 302 Ark. 462, 467, 791 S.W.2d 354, 357 (1990), and Ark. Code Ann. § 16-93-701(b)(3)). This court has held that the special needs of the parole process call for intensive supervision of the parolee, making the warrant requirement impractical. *Clingmon*, 2021 Ark. App. 107, at 5, 620 S.W.3d at 187. Moreover, a warrantless search conducted with valid consent does not violate the Fourth Amendment. *E.g., Hatcher v. State*, 2009 Ark. App. 481, at 3, 324 S.W.3d 366, 367.

It is undisputed that as a condition of his release on parole, Hall signed conditions of his release that he "must submit [his] person *and/or property*, place of residence, and motor vehicles to search and seizure at any time, day or night, with or without a search warrant by any Arkansas Department of Community Correction officer." (Emphasis added.) Moreover, Hall, as a parolee, had a diminished expectation of privacy; however, we are mindful that "[m]odern cell phones are not just another technological convenience," *see Riley v. California*,

573 U.S. 373, 403 (2014), and that "[w]ith all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Id.*

Under these particular facts and circumstances, and even absent his conditions of release for parole and the signed waivers, the evidence before us supports the conclusion that Hall specifically and voluntarily consented to Officer Maybee's search of his cell phone to find the text-message reminder and unlocked the phone for her without restriction. While Officer Maybee was searching for the message pursuant to Hall's consent, she noticed evidence of possible parole violations that gave rise to the additional investigation that led to the charge and ultimate conviction for failing to comply with registration requirements. Because a warrantless search made with consent does not violate the Fourth Amendment, *see Blackwell v. State*, 338 Ark. 671, 678, 1 S.W.3d 399, 403 (1999), we hold that the circuit court did not err by denying Hall's motion to suppress, and we affirm.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Miller Butler Schneider Pawlik Rozzell PLLC*, by: *Alicia M. Canfield*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.