# IN THE SUPREME COURT OF IOWA

No. 20–1300

Submitted November 16, 2021—Filed February 18, 2022

**STATE OF IOWA,**

Appellee,

vs.

**MYRANDA MARIE RINCON,**

Appellant.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

The defendant appeals her conviction of possession of marijuana as a second or subsequent offense and challenges the district court's denial of her motion to suppress evidence. **AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., joined. McDermott, J., filed an opinion concurring in part and dissenting in part, in which Appel, J., joined.

Martha J. Lucey, State Appellate Defender, Rachel C. Regenold (argued), and Vidhya K. Reddy (until withdrawal), Assistant Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

**MANSFIELD, Justice.**

**I. Introduction.**

In the middle of the night, police encountered a stolen car parked near an apartment complex with the engine running, one passenger seated in the front seat, and three passengers in back. An individual who appeared to be the driver was walking from the apartment complex toward the front driver's side door. The officers observed a half-empty bottle of liquor on the driver's seat and another open container of liquor standing on the rear seat floorboard. The officers directed all the passengers to get out of the vehicle.

One of the passengers retrieved her backpack as she exited the vehicle. An officer took that backpack and placed it on the hood of a patrol car, and another officer immediately noticed a plastic bag of marijuana sticking out of the backpack's front pocket. The subsequent search of the backpack confirmed the presence of illicit drugs.

In the ensuing criminal proceeding, this passenger moved to suppress the results of the search of her backpack. The district court denied the motion on the basis of the automobile exception.

The automobile exception allows law enforcement to search a vehicle without a warrant when they have probable cause to believe the vehicle contains contraband. *See State v. Storm*, 898 N.W.2d 140, 145–46 (Iowa 2017). On appeal, we must decide whether a passenger can defeat law enforcement's ability to search a container under the automobile exception by removing that container from the vehicle. In *State v. Eubanks*, we said no, reasoning, "Defendant had no

right to insulate her purse or any other container from a lawful warrantless search by the simple expedient of physically removing the purse and its contents from the car while the search was in progress." 355 N.W.2d 57, 60 (Iowa 1984).

We believe *Eubanks* was well-reasoned and reaffirm it today. Accordingly, we affirm the passenger's conviction and sentence.

**II. Facts and Procedural Background.**

**A. Factual Summary.** In the early morning hours of Christmas Eve 2019, Des Moines Police Officer Cole Johnson was on patrol. At approximately 2:45 a.m., he observed a gray Chevrolet Malibu with its engine running parked on the side of the road in front of an apartment building. He ran a check on the license plate and discovered the car had been reported as stolen.[1]

Officer Johnson decided to investigate. When he pulled his marked police vehicle up behind the stolen car, he saw a man whom he recognized as Clifton Melton walking from the apartment complex toward the driver-side front door of the car. Officer Johnson approached Melton and asked, "Is this your car?" Melton replied, "No, sir." Officer Johnson continued, "I just seen you get out of it and walk up there. . . . Whose car is it?" Melton explained that it was his "home girl's," gesturing back to the apartment building. Officer Johnson and his partner, Officer Jordan Ulin, handcuffed Melton and placed him under arrest.

After Melton had been detained, Officer Johnson shined a flashlight into the vehicle and remarked, "You've got a whole carload of people." Officer Johnson

---

[1]This factual narrative is based on the bodycam and dashcam videos that were admitted into evidence at the suppression hearing.

added, as he shone the flashlight on an opened bottle of liquor sitting on the front seat, "You've got an open container sitting there, too." Officer Johnson asked the passengers for identification. There were four passengers in the Malibu: three in the back and one in the front passenger seat.

Officer Johnson called in the stop on his radio. He then opened the driver-side front door to turn off the engine. He took the keys out of the ignition and placed them on the dash. As he did so, the front seat passenger, who turned out to be Myranda Rincon, was talking on her cell phone with a backpack resting at her feet. Rincon explained to the officer that she "just got picked up from a friend's house" and was "going home." When Rincon asked, "I'm not being detained or anything?" Officer Johnson told Rincon she, in fact, was being detained. After some protest from Rincon, Officer Johnson further explained, "Well, here's the deal: you all need to produce an ID, okay? Because you're in a stolen car, and we're gonna figure out who everybody is. And not only that, you got an open container sitting right there on the seat." He pointed again to the half-empty bottle of liquor lying in the driver's seat. After further protest, Rincon eventually provided her name, date of birth, and last four digits of her social security number.

Following this exchange, Officer Johnson and Officer Ulin moved on to question the passengers in the back seat of the Malibu. While the officers were requesting identifying information, Office Johnson noticed another open container stationed on the floor in the back of the passenger compartment.

Officer Johnson announced the discovery of the bottle loudly enough to be overheard, stating, "You've got another open container right there."

The passenger who was seated in the middle of the back seat asked to get out of the car because he was "cramped up." Officer Johnson replied, "Yeah, you guys can get out." Officer Ulin can be heard on Johnson's bodycam saying, "Yeah, we are going to get everybody out." The officers directed the back seat passengers out of the Malibu. One of them grabbed several items and put them in a bag that she took out of the vehicle with her. Officer Johnson had this passenger leave the bag on top of the trunk of the Malibu to be searched later.

While this was going on, Rincon stepped out of the front passenger seat of the vehicle, taking her backpack with her. Soon afterward, Officer Ryan Steinkamp arrived on the scene. He saw Rincon standing by the front passenger door. She was talking on the phone, with her backpack on the ground by her feet. Because Officer Steinkamp misunderstood the situation at first, he ordered Rincon to get back in the car. But once he realized what was going on, Officer Steinkamp escorted Rincon to the front of one of the patrol cars, placed Rincon's backpack on the hood of the patrol car, and handcuffed her.

While Officer Steinkamp handcuffed Rincon, another officer directed his flashlight toward her backpack and noticed a rolled plastic bag visible from an open front compartment on the backpack. Without touching the backpack or the plastic bag, that officer quickly identified the bag as containing marijuana, stating, "You've got weed right there."

Officer Steinkamp then walked over to the Malibu and shined his flashlight into it for a five-second look. Steinkamp interjected, "You've got dope right here in the door." Upon examination, this "dope" that was visible in the car door turned out to be methamphetamine.

The officer who had previously noticed the marijuana in Rincon's backpack returned to open up the backpack and fully search it. The backpack had a main compartment and a smaller front compartment. The officer pulled the rolled plastic deposit bag containing marijuana out of the smaller front compartment without unzipping or further opening the backpack. Then, he proceeded to search the rest of the backpack while Rincon watched and talked to him. During this discussion, the officer explained to Rincon, "You had weed in plain view." In addition to the marijuana, the officer found a baggie containing methamphetamine.

Based on our review of the videos, it was possible to see through the plastic bag containing the marijuana. A bulk of green, leafy substance is visible in the bag on the video taken from Officer Johnson's bodycam.

During the course of the stop, the officers also found methamphetamine in a plastic bag under a tree near the apartment building where Melton was first observed. In addition, they found another baggie of methamphetamine on the rear passenger floorboard.

Rincon was arrested for possession of the marijuana and methamphetamine found in her backpack. Melton, the driver, was arrested and charged with possession of a controlled substance with intent to deliver and

second-degree theft. One of the back seat passengers was also arrested and charged with possession of a controlled substance. Another was arrested because he had an outstanding warrant. One passenger was allowed to go home.

**B. The Criminal Proceeding.** On February 3, 2020, the State filed a trial information in the Polk County District Court charging Rincon with two counts of possession of a controlled substance as a second or subsequent offense in violation of Iowa Code section 124.401(5) (2019), an aggravated misdemeanor. Count I related to the marijuana in the backpack, the second count to the methamphetamine.

On March 26, Rincon moved to suppress the evidence found in her backpack, arguing the backpack "was searched without her consent, without probable cause, and not incident to arrest." The State resisted this motion. The State claimed the detentions were legal and there was probable cause to search the stolen car and all containers inside the car that could contain contraband. The resistance included three paragraphs discussing the plain-view exception to the warrant requirement. However, the prosecution's resistance did not make a specific plain-view argument regarding the marijuana found in Rincon's backpack.

A few days later, Rincon filed a brief amplifying her arguments. The brief addressed the plain-view exception in the context of Rincon's backpack. Rincon argued,

> The State first advances the "plain view" exception. However, the contraband in this case was contained within an opaque back pack. It was only after officers seized, opened, and went through it

> that they found bags of controlled substances[.] . . . Rincon's bag was zipped and shut, and had to be opened to find the contraband.

(Citations omitted.)

The court's initial ruling granted Rincon's motion to suppress. The court found the search-incident-to-arrest exception did not apply and there was no probable cause to search Rincon's backpack.

Immediately, the State filed a motion to reconsider. In that motion, the State focused on an argument that it believed had gone unaddressed in the court's ruling. The State argued that Rincon lacked standing to object to the search of the stolen car and containers therein, including the backpack. Although framed as a "lack of standing" argument, the State in substance was urging that the automobile exception trumped Rincon's right to object to the search of her backpack.

Following a hearing, the district court granted the State's motion to reconsider and overruled Rincon's motion to suppress. In this ruling, the court acknowledged it had "failed to address the State of Iowa's argument that Rincon lacked standing to challenge the search of the stolen vehicle and its contents which included Rincon's backpack." The court reasoned,

> [P]rior to the search of Rincon's backpack, law enforcement had probable cause to believe the detained vehicle was transporting contraband. Accordingly, Rincon had no expectation of privacy that would have precluded law enforcement from searching the containers within the detained vehicle, which included her backpack.

Before trial, the State dropped the possession of methamphetamine charge in return for Rincon agreeing to a trial on the minutes as to the possession of marijuana charge.

On September 25, the district court found Rincon guilty of possession of a controlled substance (marijuana) as a second or subsequent offense, an aggravated misdemeanor. Iowa Code § 124.401(5). The court suspended her term of incarceration and placed her on probation for a period of one year. *Id.* § 903.1(2); *id.* § 907.3(3).

Rincon filed a timely appeal. On appeal, she argues the search of her backpack was not justified under the plain-view exception, the automobile exception, or the search-incident-to-arrest exception to the warrant requirement. Therefore, she maintains, the search violated the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. We retained the appeal.

**III. Standard of Review.**

"The standard of review for a constitutional search and seizure challenge is de novo." *State v. Haas*, 930 N.W.2d 699, 702 (Iowa 2019) (per curiam).

**IV. Analysis.**

The Fourth Amendment and article I, section 8 both protect "against unreasonable searches and seizures." Our cases provide that "[s]earches conducted without a warrant are per se unreasonable, 'subject only to a few specifically established and well-delineated exceptions.' " *State v. Watts*, 801

N.W.2d 845, 850 (Iowa 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

We begin by considering the automobile exception, which the State invokes to justify the warrantless search of Rincon's backpack. The State points out that Rincon's backpack was inside the Chevy Malibu when officers developed probable cause to search the vehicle. The State argues that Rincon's decision to pick up the backpack and take it outside the vehicle did not terminate the officers' authority to search it. *See Eubanks*, 355 N.W.2d at 59. Rincon counters that the police lacked probable cause to search Rincon's backpack and that the automobile exception no longer applied to her backpack once she removed it from the vehicle.

The automobile exception allows law enforcement to search a vehicle without a warrant if there is probable cause to believe it contains contraband. *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle." *Id.* Passengers' belongings may be searched as well. *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999) ("[P]olice officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search.").

The automobile exception does not require a separate finding of exigent circumstances. *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (per curiam). "If a car is readily mobile and probable cause exists to believe it contains

contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.* at 467 (omission in original). Courts have explained that a finding of exigency is not required because a vehicle is inherently mobile. *E.g. Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996) (per curiam). The automobile exception has also been justified because "pervasive regulation" of automobiles reduces people's expectation of privacy in them. *Id.*

In *State v. Storm,* we recently reaffirmed the validity of the automobile exception under article I, section 8 of the Iowa Constitution. 898 N.W.2d at 142, 156. We pointed to the inherent mobility of the automobile and the lower expectation of privacy therein. *Id.* at 145–47. We also noted the unavailability of roadside electronic warrants. *Id.* at 142. Generally speaking, such warrants are still unavailable in Iowa. *See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Establishment of the Electronic Search Warrant Pilot Project* (Apr. 27, 2020) (establishing an electronic search warrant pilot project in certain counties only); Iowa Sup. Ct. Amended Memorandum of Operation, *In the Matter of Establishment of the Electronic Search Warrant Pilot Project* (Aug. 6, 2021) (updating and expanding the operation of the pilot project to certain other counties).

The State contends, among other things, that the open-container violations provided probable cause to search the Malibu under the automobile exception. We agree with the State. Officer Johnson noticed an opened bottle of liquor in the driver's seat almost immediately. A couple of minutes later, he saw another open container on the floor below the backseat. Iowa Code section

321.284(1) provides, "A driver of a motor vehicle upon a public street or highway shall not possess in the passenger area of the motor vehicle an open or unsealed bottle, can, jar, or other receptacle containing an alcoholic beverage." Iowa Code section 321.284A(1) provides, "A passenger in a motor vehicle upon a public street or highway shall not possess in the passenger area of the motor vehicle an open or unsealed bottle, can, jar, or other receptacle containing an alcoholic beverage." Discovery of these illegal acts gave the officers probable cause to search the car for other evidence of these offenses. *See Thomas*, 458 U.S. at 261; *State v. Edgington*, 487 N.W.2d 675, 678 (Iowa 1992) ("Probable cause for a vehicle search can be established by the officers' discovery of . . . contraband.").

Numerous courts have held that an open-container violation provides probable cause for a vehicle search under the automobile exception. *See, e.g.*, *People v. Hill*, 929 P.2d 735, 737, 739–40 (Colo. 1996) (en banc) (holding that open beer bottles gave officers probable cause of an open-container violation and justified a warrantless search); *State v. Thla Hum Lian*, 481 P.3d 759, 764–65 (Idaho Ct. App. 2020) (stating that a variety of factors indicated an open-container violation and "established probable cause to search Lian's vehicle for an open container. Accordingly, the vehicle search was justified under the automobile exception to the warrant requirement."); *People v. McGhee*, 162 N.E.3d 1080, 1088 (Ill. App. Ct. 2020) ("We find that the search of the locked glove compartment for open containers of alcohol was justified under the automobile exception because the officers had probable cause to search the locked glove compartment for open containers of alcohol."); *Gomez v. State*, 168

P.3d 1139, 1143 (Okla. Crim. App. 2007) ("Officer Burpo's warrantless search of the interior of Gomez's car for an open container of alcohol was lawful because it was supported by probable cause."); *State v. Fischer*, 873 N.W.2d 681, 685, 688, 692 (S.D. 2016) (finding that an officer who spotted an open beer can had probable cause to search the vehicle under the automobile exception); *Elrod v. State*, 533 S.W.3d 52, 57 (Tex. App. 2017) ("Based on the odor of alcohol and Elrod's admission that there was an open container in his vehicle, there existed probable cause to search Elrod's vehicle for the open container.").

Any container in the vehicle that could hold an alcoholic beverage—even a flask or a miniature bottle—would be fair game. *See United States v. Ross*, 456 U.S. 798, 824 (1982) (explaining that the scope of a search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found"); *see also State v. Daily*, 429 P.3d 1242, 1245–46 (Idaho Ct. App. 2018) (finding that an open-container violation justified the search of a vehicle glove box).

Rincon responds (at least on appeal) that there was no probable cause to believe an open-container violation had occurred because an open-container violation requires someone to be operating the vehicle on a public street or highway. *See* Iowa Code §§ 321.284(1) (referring to a "driver of a motor vehicle upon a public street or highway"), 321.284A(1) (referring to a "passenger in a

motor vehicle upon a public street or highway").[2] Here, the car was parked and there was no driver in the vehicle.

Yet, even if we assume that an open-container violation requires the vehicle to have a driver or to be in motion, there was still probable cause to support a search of the vehicle. Officer Johnson can be heard on the video stating he observed Melton get out of the driver's seat and walk to the apartment as he pulled up. When Officer Johnson stopped to investigate, the key was in the ignition, the engine was running, and Melton was returning to the driver's seat. Rincon told Officer Johnson that she had just been picked up at a friend's house and was getting a ride home. In short, there was ample reason to believe that the car had recently been operated and in motion. Thus, an open-container violation had just occurred, even if it was not presently occurring.

Rincon's primary argument—both in the district court and in this court— is that her backpack was off limits because it was outside the car when it was searched, and there was no independent basis for searching her property.

Rincon cites language from *Wyoming v. Houghton*, arguing that it limits automobile searches to containers that are inside the vehicle at the time the search is performed. 526 U.S. 295. *Houghton* involved a traffic stop in which the

---

[2]Rincon's counsel argued more narrowly below:

Nobody's asking to suppress anything that was found in the vehicle. The motion to suppress arose because the police actually did not stop this vehicle, it was already stopped. They pulled people out of the vehicle; fine. They searched the vehicle because of something they found in plain view in the driver's seat; fine. But then they grabbed Ms. Rincon and they took her personal effects when she was not under suspicion of any criminal activity and searched her personal backpack; it was a backpack, not a purse. And that was the search that we objected to and that was the search that I raised in my motion to suppress.

officers saw a hypodermic syringe in the driver's shirt pocket. *Id.* at 298. The officers ordered the driver and two passengers out of the car and searched the vehicle. *Id.* One of the passengers, Houghton, left her purse on the backseat. *Id.* The officers searched the purse and found methamphetamine. *Id.* The Wyoming Supreme Court held that the officers could not search Houghton's purse because it was "the personal effect of a passenger who is not suspected of criminal activity." *Id.* at 299. The United States Supreme Court reversed and held that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 307.

Rincon argues that the *Houghton* Court made statements indicating that officers may only search belongings located in the vehicle at the time of the search. For instance, the Court said, "A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." *Id.* at 302. Rincon also points to the *Houghton* concurrence, which said, "[T]he rule applies only to containers found within automobiles. And it does not extend to the search of a person found in that automobile." *Id.* at 308 (Breyer, J., concurring).

*Houghton*, however, did not involve a container that used to be in the vehicle until a passenger removed it. Instead, *Houghton* presented the question of whether *ownership* of the container mattered for purposes of the Fourth Amendment automobile exception, and the Court determined it did not. *See id.*

at 302 (majority opinion). Thus, the Court rejected "a distinction among packages or containers based on ownership" and concluded that "[w]hen there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Id.*

We previously considered removed containers in *Eubanks*, 355 N.W.2d 57. There, we held that a container removed from a vehicle may be searched pursuant to the automobile exception if the container had been in the vehicle when probable cause to perform the search arose. *Id.* at 60.

The facts of *Eubanks* are similar to the present case. An officer initially stopped the defendant's vehicle because of a faulty headlight. *Id.* at 58. Upon approaching the vehicle, "[t]he patrolman smelled the odor of marijuana drifting from the car." *Id.* at 59. The officer asked the defendant to step out of the vehicle. *Id.* at 58. When the defendant stepped out, she took her purse with her. *Id.* The officer proceeded to search the vehicle and found "a pair of forceps clasping a small marijuana cigarette" in the ashtray. *Id.* The officer also searched the purse that the defendant had removed from the vehicle, and the officer found marijuana hidden in a makeup case. *Id.*

The district court granted the defendant's motion to suppress. *Id.*[3] We granted the state's application for discretionary review on the suppression issue. *Id.* Seeking to sustain the district court's ruling, the defendant argued that

---

[3]*Eubanks* did not involve a claim under article I, section 8. 355 N.W.2d at 58.

although probable cause to search the vehicle existed, there were no exigent circumstances to justify a warrantless search of her purse. *Id.* at 59. She urged that her purse had a personal character that made her expectation of privacy reasonable. *Id.* at 60.

We did not accept the defendant's position and, instead, reversed the district court's grant of her motion to suppress. *Id.* at 58. We explained that the circumstances justifying the automobile exception did not end merely because the defendant was no longer in the car. *Id.* at 60. We added that "all containers within the car when it was stopped were fair game for the car search." *Id.* We found the defendant's argument about the personal nature of her purse unavailing due to the "diminished expectation of privacy involved when the object of a search is a stopped motor vehicle." *Id.* We concluded in *Eubanks* that "[the officer] could lawfully open and examine all containers within the vehicle from the time probable cause appeared." *Id.*

Rincon argues that *Eubanks* should be overruled in light of *Houghton*. But, as we have already noted, *Houghton* addressed a different issue. If anything, the majority opinion in *Houghton* supports the result in *Eubanks* because it rejects a legal distinction based on who owned or appeared to own a container that was within the vehicle. *See Houghton*, 526 U.S. at 302. The concurring opinion in Houghton draws perhaps a slightly different line. It seemingly would offer protection to a purse if it were "attached to [the passenger's] person" rather than "separate from the person." *Id.* at 308 (Breyer, J., concurring). But the concurrence is not the law; there were five votes for the majority without it. *Id.*

at 296 (majority opinion). And in any event, this backpack was not attached to Rincon's person.

We are not convinced *Eubanks* should be overruled. Rincon cites no case that would support our doing so. To the contrary, as the following cases demonstrate, courts continue to hold that passengers cannot reduce the scope of a permissible automobile search by the stratagem of taking items out of the vehicle.

In *United States v. Davis*, the United States Court of Appeals for the Fourth Circuit upheld a firearms conviction where guns were found in a personal bag that had been moved outside the vehicle by the defendant passenger. 576 F. App'x 292, 294–95 (4th Cir. 2014) (per curiam). As the court put it,

> [W]e have no hesitation in concluding, as the government argued below, that the fact that the bag was moved before it was discovered did not vitiate Officer Cox's authority to seize the bag and search it attendant to the lawful search of the vehicle. Specifically, at the time of the stop, the probable cause to search the car extended to the bag. Accordingly, the search of the bag was a reasonable search under the Fourth Amendment.

*Id.* (citations omitted).

In *State v. Furrillo*, 362 P.3d 273 (Or. Ct. App. 2015), the Oregon Court of Appeals was presented with the same issue we dealt with in *Eubanks* and came to exactly the same conclusion. In that case, a K-9 alerted to the presence of drugs in a Jeep during a traffic stop, which gave the officers probable cause to search the vehicle. *Id.* at 275. The defendant was a passenger and he was ordered to get out, along with the driver, so that the Jeep could be searched. *Id.* He brought his backpack out of the vehicle with him and put it on the ground. *Id.*

The officer told him he couldn't bring it out, and the backpack was put back in the Jeep. *Id.* The backpack was searched and heroin was found. *Id.*

The court found the search to be constitutional, reasoning, "Any containers within the Jeep, which the deputies had probable cause to search for drug-related evidence, had already fallen within the purview of the automobile exception." *Id.* at 276. The court further explained, "Once the requirements for the automobile exception had been established, taking the backpack out of the Jeep in an effort to avoid having it searched did not eliminate the exigency or otherwise remove the backpack from the purview of the search exception." *Id.*; *see also State v. Pallone*, 613 N.W.2d 568, 586 (Wis. 2000) (affirming a warrantless search of a passenger's duffel bag, even though the passenger asked the officer to remove it from the vehicle, because the officer "had probable cause to carry out a full search of the truck and its contents for additional containers of open beer"), *overruled on other grounds by State v. Dearborn*, 786 N.W.2d 97, 105–06 (Wis. 2010).

Rincon cites some cases that have found a search of a passenger's bag outside the vehicle to be unconstitutional. *Sossamon v. State*, 576 S.W.3d 520 (Ark. Ct. App. 2019); *State v. Maloney*, 489 P.3d 847 (Idaho 2021); *State v. Boyd*, 64 P.3d 419 (Kan. 2003); *State v. Lewis*, 611 A.2d 69 (Me. 1992); *State v. Funkhouser*, 782 A.2d 387 (Md. Ct. Spec. App. 2001); *State v. Lelm*, 962 N.W.2d 419 (N.D. 2021). But all of these cases are distinguishable in at least one vital respect, and all are consistent with the holding in *Eubanks*. *See Sossamon*, 576 S.W.3d at 526–27, 529 (suppressing evidence because the defendant's bags were

removed from the vehicle before probable cause to search the vehicle existed); *Maloney*, 489 P.3d at 854 ("The automobile exception does not apply to allow the search of Maloney's purse because it was not in the vehicle when probable cause arose. . . . [T]he location of the container at the point at which probable cause arises is the critical determination."); *Boyd*, 64 P.3d at 427 (suppressing evidence found in a passenger's purse when an officer ordered the passenger to leave the purse in the car but did not have probable cause to search the car or its contents at that time); *Lewis*, 611 A.2d at 71 (holding the automobile exception didn't apply because, "at the time defendant's carry-on bag was inside his automobile, the police did not have any probable cause to believe that defendant possessed any contraband at all, in the car or otherwise"); *Funkhouser*, 782 A.2d at 398–99 (suppressing evidence in a "fanny pack" worn by the defendant because it was "part of his person" and not a container; explaining, "had it not been attached to the body . . . it would unquestionably have been vulnerable to a warrantless search"); *Lelm*, 962 N.W.2d at 423 ("Because the backpack was not within the vehicle at the time of the canine deployment, officers did not have probable cause to search the backpack and the automobile exception did not apply."). In these cases, either the item was attached to the passenger's person or it was removed from the vehicle before law enforcement developed probable cause to search the vehicle. The rationales of these decisions do not undermine *Eubanks*; some do the opposite.

As a practical matter, Rincon's proposed rule would allow persons to frustrate a valid automobile search by removing objects from the vehicle. The

police interaction with another passenger of the stolen car in this case provides another reason why the holding in *Eubanks* makes sense. When Officer Johnson had one of the rear seat passengers step out of the car, he allowed her to gather her belongings inside the vehicle and place them in her bag. Officer Johnson then told her to put the bag on top of the trunk, presumably with the intention of searching the bag later. As things turned out, this individual was the only occupant of the Malibu who wasn't arrested that night. By letting her remove her property from the car, Office Johnson in effect gave this passenger the opportunity to clear herself of involvement in the drug possession with which others were charged. If we established a bright-line rule that only cargo left in the vehicle by its occupants could be searched, officers would adjust their policing methods accordingly. Law enforcement would likely order persons to exit the vehicle while leaving everything but themselves behind.

A final, potential question is whether the pockets of Rincon's backpack were the type of container that could have held contraband. Rincon does not contest this point here, and she did not contest it below. Implicitly, she concedes here—and she implicitly conceded below—that *if* the automobile exception applies, the search of the backpack was valid. In granting the State's motion to reconsider its initial decision to suppress the results of the search of the backpack, the district court simply relied on *United States v. Ross* and *Eubanks* to hold that "Rincon had no expectation of privacy that would have precluded law enforcement from searching the containers within the detained vehicle, which included her backpack." Regardless, on our de novo review, the front

pocket of the backpack (where the bag of marijuana was protruding) was large enough to hold at least a single-shot bottle of liquor. And, in any event, the plastic bag of marijuana was spotted in plain view before the officers even began searching the inside of the backpack.[4]

Rincon argues that the search of her backpack violated both the Fourth Amendment to United States Constitution and article I, section 8 of the Iowa Constitution. *Eubanks* was decided only under the Fourth Amendment. However, as we have noted, we recently upheld the automobile exception against an article I, section 8 challenge. *Storm*, 898 N.W.2d at 142, 156. And for the reasons expressed herein, we believe *Eubanks* is consistent with that exception, both legally and logically. We see no reason to reach a different conclusion under the Iowa Constitution.

## V. Conclusion.

For the foregoing reasons, we affirm Rincon's conviction and sentence.

**AFFIRMED.**

Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., join this opinion. McDermott, J., files an opinion concurring in part and dissenting in part, in which Appel, J., joins.

---

[4]The State makes a separate argument on appeal that the plain-view exception allows it to *bypass* the automobile exception as a ground for affirming the search. Rincon argues, with some justification, that this particular theory was not raised below. But the automobile exception has been the crux of the parties' dispute, and Rincon does not dispute that her appeal rises and falls on the basis of that exception.

**McDERMOTT, Justice (concurring in part and dissenting in part).**

The Iowa Constitution grants "the people" a right of protection against unreasonable searches and seizures of "their persons, houses, papers and effects." Iowa Const. art. I, § 8. This right, like most rights granted in the constitution, protects *individuals*. It's characterized by the principle that to search a person or a person's effects the state must be able to articulate individualized suspicion of wrongdoing. Individualized evidence is sensitive to whether a particular *individual* has broken the law.

The rule that the majority announces, applied to the Iowa Constitution for the first time today, requires no individualized suspicion to search the "effects" (that is, the moveable property) of passengers in vehicles. The court's holding declares that the Iowa Constitution permits police to search any passenger's purse, backpack, bag, suitcase, briefcase, or other container even if that passenger is not believed to be an accomplice of the driver in the crime in question and even if the driver reasonably could not have hidden contraband in the purse or backpack without the passenger's knowledge. I agree with the majority's holding that the police didn't violate Rincon's constitutional rights in searching her backpack under the facts in this case. But the broad— *unnecessarily* broad—constitutional precedent that the majority announces in reaching its holding goes too far. I thus join the majority only in the result.

In *State v. Eubanks,* we held that the Fourth Amendment made no distinction between a container found inside a vehicle and one removed from a

vehicle. 355 N.W.2d 57, 60 (Iowa 1984). That holding, in my view, is fundamentally correct. But the *Eubanks* court went further, announcing a broad rule that the automobile exception permits warrantless searches of "*all* containers within the car." *Id.* (emphasis added). The court thus permitted police the power to search containers in the vehicle without any individualized assessment about whether probable cause existed for the search of the container—even if, for example, the container obviously belonged to a passenger and there was no reason to suspect the passenger's involvement in any criminal activity. We decided *Eubanks* under the Fourth Amendment to the United States Constitution, not the Iowa Constitution. *Id.* at 58. Our court today, for the first time, applies *Eubanks* to Iowa's Fourth Amendment analog, article I, section 8 of the Iowa Constitution.

Under the "automobile exception" to the warrant requirement, if probable cause of a crime arises during a vehicle stop, police may search containers in the vehicle (including purses, backpacks, luggage, and so forth) that reasonably might hold evidence of the crime in question without getting a search warrant. *Carroll v. United States*, 267 U.S. 132, 149 (1925). But in creating an exception to the warrant requirement (or an exception to *any* constitutional right, for that matter), courts should aim to draw the exception as narrowly as possible. "The Court will not 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (quoting *Liverpool, N.Y. & Phila. Steam-Ship Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)).

This exception fails that test. The majority could have drawn the exception to exclude containers in vehicles that clearly belong to a passenger when the passenger isn't believed to be an accomplice of the driver in the potential crime in question and there's no basis to conclude that the driver placed contraband in the passenger's container without the passenger's knowledge. Such a rule— tailored to searches of the property of people against whom the police actually *have* probable cause—would provide for the *individualized* suspicion that the constitution requires. But it doesn't. The rule applied today is too blunt an instrument.

"Courts should recognize that, when it comes to nonsuspect third parties, the Fourth Amendment itself demands . . . efforts at minimization." Richard M. Re, *Fourth Amendment Fairness*, 116 Mich. L. Rev. 1409, 1458 (2018). Professor LaFave, in analyzing the United States Supreme Court's Fourth Amendment analysis in *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999), criticized expanding the automobile exception to permit searches of containers without individualized probable cause. *See* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.2(d), at 809–18 (6th ed. 2020). He finds no legal basis for the premise undergirding the broad rule in *Houghton*—that passengers in a vehicle have a reduced privacy interest in their effects simply because they are passengers in a vehicle—and proposes the more narrowly-tailored rule discussed above to uphold a passenger's constitutional rights. *Id.*

Examples of how a passenger's constitutional freedom from warrantless searches by police might be infringed in light of today's holding aren't hard to

conjure. Take, for instance, a taxi or (ever more common) rideshare service such as Uber or Lyft that has just picked up a passenger. Under today's ruling, if the police stop the car and discover that the driver possesses drugs, the police would have full authority to rifle through the *passenger*'s purse or backpack in the back seat. Indeed, the police would get to search the passenger's luggage in the trunk. All such passengers risk a police search of their belongings based on probable cause associated not with them but with the stranger behind the wheel.

The majority's broad rule—since it applies to automobiles—carves out an exception that would include large public carriers as well. If the police were to stop a bus, for instance, and develop probable cause to search for contraband associated with any person on the bus, the rule would permit the police free rein to search every container of every passenger (purse, backpack, suitcase, briefcase, and so on) that might possibly hold something of the size and shape of the contraband. This right to search attaches even if there's no reason to believe that another passenger is an accomplice in the potential crime in question and even if there's no possibility that that contraband could have been hidden in the passenger's bag without her knowledge.

Blameless riders of public and private transport services will not be the only potential victims of the rule's overreach. Over the course of one's lifetime, a person from time to time finds himself a passenger in a vehicle driven by someone that he doesn't know well; for example, when catching a ride with a friend-of-a-friend or a just-met acquaintance as part of a group outing. An assumption that all people in a vehicle act in concert or, more insidiously, share

some common criminal purpose, simply doesn't bear out. The rule paints with a roller brush when a liner brush is required, smearing all passengers with "probable cause" in the guilt-by-association manner we usually recoil from in our constitutional search-and-seizure analysis.

In *United States v. Di Re*, the United States Supreme Court analyzed whether the automobile exception to the warrant requirement permitted warrantless searches of passengers themselves (to use the Constitution's language, searches of the passengers' "persons"). 332 U.S. 581, 586 (1948). Justice Jackson analogized the privacy interests of passengers in a car to those of guests in a residence:

> Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?

*Id.* at 587. The holding in *Di Re*—that passengers themselves may not be searched under the automobile exception to the warrant requirement—remains good law. *See, e.g., Maryland v. Pringle*, 540 U.S. 366, 373–74 (2003). But while vehicle passengers maintain their right against warrantless searches of "their persons" without probable cause, the court today grants no similar protection against warrantless searches of their "effects." This probable-cause-by-association presumption seems to me incompatible with the constitution.

When analyzing the facts of this case under the narrower (and more importantly, *constitutional*) exception to the warrant requirement that I've described, Rincon still loses her appeal. As the majority neatly lays out, Rincon and her backpack were in the front passenger seat when the police developed probable cause to search for open containers of alcohol. Police observed an open container on the driver's seat next to her and another in the backseat. Her story to police that she was merely in the process of getting a ride home from work didn't line up, as the two bottles of alcohol open and obvious in the passenger compartment alongside her suggested a roving holiday party on Christmas Eve as opposed to a humdrum lift home from work. As the majority finds, Rincon could have attempted to hide evidence of other open containers of alcohol in her backpack. The police had *individualized* probable cause involving Rincon, and that individualized probable cause brought the search of her backpack squarely within the automobile exception to the warrant requirement.

One might suggest that, even accepting that our court could have tailored a narrower search exception that doesn't expose passengers to violations of their constitutional rights, a "bright line" would be easier or more efficient for law enforcement. Clear rules, when they can be drawn consistent with an individual's constitutional rights, are worthy judicial pursuits. *See, e.g.*, *State v. McGee*, 959 N.W.2d 432, 448 (Iowa 2021) (McDermott, J., concurring specially) (proposing the court find that investigation of an unconscious driver suspected of alcohol intoxication meets the exigency exception to the warrant requirement and permits a warrantless blood draw from the driver). But the Constitution

doesn't direct courts to disregard enumerated constitutional rights just so law enforcement can more easily perform its work. On the contrary, "the Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law." *Mincey v. Arizona*, 437 U.S. 385, 393. (1978). Search-and-seizure protections aren't relegated to a deferred position in favor of easier-to-apply rules for the field. An "unreasonable" search doesn't become "reasonable" merely because there's a bright line available.

Without some individualized suspicion of a passenger's participation—witting or unwitting—in the crime in question, probable cause to search that passenger's effects should not be presumed. People don't surrender their constitutional rights by their "mere presence in a suspected car." *Di Re*, 332 U.S. at 587. Subjecting passengers to an expansive rule that permits police to search their bags when police have no individualized basis connecting them or their bags to criminal activity gets the required constitutional analysis wrong, and I thus join in the result only.

Appel, J., joins this concurrence in part and dissent in part.